[No. B163114. Second Dist., Div. Seven. Apr. 21, 2004.]

FASHION 21 et al., Plaintiffs and Respondents, v.
COALITION FOR HUMANE IMMIGRANT RIGHTS OF LOS ANGELES
et al., Defendants and Appellants.

1142

## Counsel

Law Office of Carol A. Sobel, Carol A. Sobel, Yvonne T. Simon; Newman, Aaronson & Vanaman and Robert M. Meyers for Defendants and Appellants.

Latham & Watkins, Wayne S. Flick, Robin D. Dal Soglio, Brian T. Glennon, Yury Kapgan and Anthony N. Luti for Plaintiffs and Respondents.

Bill Lockyer, Attorney General, Andrea Lynn Hoch, Chief Assistant Attorney General, and Ralph Lightstone, Deputy Attorney General, as Amici Curiae.

## Opinion

**JOHNSON, J.**—A seller of women's apparel and one of its owners brought this action against a nonprofit organization and one of its employees who advocate on behalf of low-income immigrant workers. Plaintiffs allege defendants defamed them by falsely claiming they are responsible for "hundreds of thousands of dollars" in unpaid wages due workers who sewed clothes

especially for sale in plaintiffs' stores. Defendants contend plaintiffs are responsible for these wages under the wage guarantee provisions of Labor Code section 2673.1.

Defendants moved to strike plaintiffs' complaint as a SLAPP suit (strategic lawsuit against public participation). The trial court denied the motion and this appeal followed.

We reverse the order denying the SLAPP motion and direct the trial court to grant the motion as to both defendants.

## FACTS AND PROCEEDINGS BELOW

Fashion 21 sells women's clothing nationwide under the name Forever 21. It purchases garments bearing the Forever 21 label in finished condition from garment manufacturers, many of whom subcontract with sewing contractors to perform some of the production and assembly work on the garments. The undisputed evidence shows Fashion 21 does not own or have any financial interest in the manufacturers or sewing contractors which produce its garments and it has never directly employed any of the workers whose wage claims are at the root of this dispute.

Defendant Coalition for Humane Immigrant Rights of Los Angeles (CHIRLA) is a non-profit organization which advocates for the rights of low-income migrant workers, many of whom are employed by the manufacturers which produce the Forever 21 line of apparel. Defendant Victor Narro is an employee of CHIRLA.[1]

In 2001, CHIRLA took up the cause of 19 garment workers who claimed they were being exploited by their employers who failed and refused to pay them minimum wage and overtime, denied them meal and rest breaks and required them to work in facilities which were poorly lit and ventilated, filled with fabric dust, infested with rats and vermin and lacked accessible fire exits. The manufacturers who employed these workers were all located in Los Angeles and produced garments sold by Fashion 21.

CHIRLA's activities on behalf of the workers began with an attempt to negotiate a settlement with Fashion 21 in which it would agree to accept responsibility for, and pay its proportionate share of, the wages due the 19 garment workers. When these negotiations proved unsuccessful CHIRLA went public with its concerns over the workers' treatment. This included a

---

[1] For convenience future references to CHIRLA include Narro and references to Fashion 21 include its owner, Do Won Chang.

call for a nationwide boycott of Forever 21 stores, demonstrations and picketing in front of the stores, and the issuance of press releases and Web site articles describing the plight of the workers and urging the public to contact Fashion 21 and demand it pay the workers the wages due them.

In response to these demonstrations, Fashion 21 instituted this lawsuit against CHIRLA alleging defamation, interference with prospective business advantage, unfair business practices and nuisance.[2]

The complaint alleges none of the complaining garment workers are or ever were employed by Fashion 21 and CHIRLA was at all times aware of this fact. Despite this knowledge, CHIRLA falsely and maliciously proclaimed in its demonstrations, leafleting, press releases, web site postings and other communications Fashion 21 owes these workers substantial amounts of unpaid wages and other employment benefits for sewing clothes bearing the Forever 21 label. The complaint further alleges during the demonstrations CHIRLA's employees trespassed within Fashion 21 stores, blocked customers' access to the stores and harassed potential customers.

CHIRLA moved to strike Fashion 21's complaint as a SLAPP suit.

The parties and the trial court agreed Fashion 21's complaint was subject to a SLAPP motion because its claims arose from the defendants' exercise of their First Amendment right of free speech in connection with a public issue.[3] The only question to be decided on the SLAPP motion was whether Fashion 21 had established "a probability [it] will prevail" on its causes of action.[4]

The trial court denied the motion. It ruled Fashion 21 had established a probability of prevailing on all its causes of action except for interference with prospective business advantage. CHIRLA filed a timely appeal from this order.[5]

---

[2] The 19 garment workers were also named as defendants but later dismissed.

[3] Code of Civil Procedure section 425.16, subdivision (b)(1).

[4] Code of Civil Procedure section 425.16, subdivision (b)(1).

[5] Fashion 21 named two other nonprofit organizations and their employees in this suit. These defendants filed a separate SLAPP motion. A hearing on the motion was continued to permit Fashion 21 to conduct limited discovery "regarding what [defendants] . . . knew about the truth or falsity of the statements they made." (See Code Civ. Proc., § 425.16, subd. (g).) We address defendants' challenge to this discovery order in *The Garment Workers Center v. Superior Court* (2004) 117 Cal.App.4th 1156 [12 Cal.Rptr.3d 506].

## DISCUSSION

I. *THE TRIAL COURT COULD CONSIDER FASHION 21'S EDITED VIDEOTAPE OF NARRO'S ACTIVITY AT A DEMONSTRATION IN DETERMINING FASHION 21'S PROBABILITY OF SUCCESS ON ITS DEFAMATION CLAIM.*

■ Under the SLAPP statute, after the defendant establishes the plaintiff's cause of action arises from the defendant's exercise of the right of petition or free speech the burden shifts to the plaintiff to "establish[] that there is a probability that the plaintiff will prevail on the claim."[6] Here it is conceded CHIRLA met its burden under the statute. Thus the burden shifted to Fashion 21 to demonstrate a probability of success on the merits.

■ Establishing a prima facie case of libel involving the plaintiff's trade or business generally requires proof the defendant made a defamatory statement concerning the plaintiff's trade or business, the statement was published, the defendant acted with some degree of fault, and damages.[7]

The publication element of Fashion 21's libel cause of action against CHIRLA rests on its contention Narro participated in a demonstration against Fashion 21 at its Highland Park store in which he distributed a defamatory flyer.[8]

Although employees and representatives of Fashion 21 were present at this demonstration along with customers and mere passersby, Fashion 21 failed to produce a declaration from any witness willing to say he or she observed Narro distribute the allegedly defamatory flyer. Instead, Fashion 21 relied entirely on an edited videotape of the demonstration shot by one of its employees. Fashion 21 contended, and the trial court found, a jury could reasonably infer from this videotape Narro distributed the subject flyer to members of the public.

CHIRLA objected to the trial court considering this videotape in determining Fashion 21's probability of success on its libel claim because the tape had

---

[6] Code of Civil Procedure section 425.16, subdivision (b)(1).

[7] 5 Witkin, Summary of California Law (9th ed. 1988) Torts, section 471 et sequitur. An allegation the plaintiff is guilty of a crime is libelous on its face (see Civ. Code, §§ 45a, 46, subd. 1; *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1136 [2 Cal.Rptr.3d 385]) and is actionable without proof of special damages. (*Walker v. Kiousis* (2001) 93 Cal.App.4th 1432, 1441 [114 Cal.Rptr.2d 69].)

[8] In the trial court Fashion 21 also contended Narro carried placards bearing defamatory statements and chanted defamatory slogans. The trial court found there was insufficient evidence to support these contentions and Fashion 21 does not pursue these contentions on appeal.

not been properly authenticated. Fashion 21 admitted the tape had been edited but it failed to submit evidence this editing did not alter the appearance of Narro's activities as shown in the original unedited version, as required by Evidence Code section 1402.[9] The trial court overruled CHIRLA's objection and considered the tape in concluding Fashion 21 had established a reasonable probability of success on its libel claim.

Had this videotape been offered at trial, CHIRLA's objection would have been well taken. The objection easily could have been overcome, however, through the voir dire of a witness who could testify the editing of the tape did not alter its representation of Narro's conduct at the demonstration. As we shall explain below, because the videotape was not inadmissible per se the trial court did not commit reversible error when it considered the tape in determining Fashion 21's probability of success on its defamation claim.

■ A court's main concern in admitting a videotape as substantive evidence of an event is making sure the tape accurately depicts what occurred. Courts have recognized factors such as "the elimination of unfavorable portions of a film" and the "angle from which a picture is taken . . . may tend to create misleading impressions."[10]

In *People v. Doggett*, the court upheld the admission of a photograph showing the defendants committing the crime charged. Because only the victim and the defendants were present when the crime took place and one of the defendants took the photograph there was no one to testify it accurately depicted what it purported to show. There was, however, evidence of when and where the picture was taken and that the defendants were the persons shown committing the crime. Furthermore, the court pointed out, a photographic expert testified the picture was not a composite and had not been faked. The court held this foundation sufficiently supported the photograph's admission as substantive evidence of the activity depicted.[11] No such assurances of accuracy were provided with respect to the edited videotape in the case before us.

■ Under Evidence Code section 1402 the party offering an edited videotape into evidence at trial bears the burden of showing the editing did

---

[9] Evidence Code section 1402 states in relevant part: "The party producing a writing as genuine which has been altered . . . after its execution, in a part material to the question in dispute, must account for the alteration or appearance thereof." The party may do so showing "the alteration did not change the meaning or language of the instrument. If he does that, he may give the writing in evidence, but not otherwise."

[10] *Harmon v. San Joaquin L. & P. Corp.* (1940) 37 Cal.App.2d 169, 174 [98 P.2d 1064].

[11] *People v. Doggett* (1948) 83 Cal.App.2d 405, 410 [188 P.2d 792], cited with approval in *People v. Bowley* (1963) 59 Cal.2d 855, 860 [31 Cal.Rptr. 471, 382 P.2d 591].

not distort the "meaning" of the activities depicted in the tape. If, at trial, Fashion 21 failed to show the edits it made in reducing seven hours of footage to 11 minutes did not "change the meaning" of the tape an objection under section 1402 would have to be sustained.

The result of failing to comply with Evidence Code section 1402 is different under the SLAPP statute.

■ It is well settled that in opposing a SLAPP motion the plaintiff's showing of a probability of prevailing on its claim must be based on admissible evidence. In *Wilcox v. Superior Court* we held the requirement of establishing a probability of success means "the plaintiff must demonstrate the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."[12] We went on to explain this test implicitly assumes the evidence on behalf of the plaintiff is admissible, "otherwise there would be nothing for the trier of fact to credit."[13] In *Roberts v. Los Angeles County Bar Assn.* we held in order to demonstrate a probability of success a plaintiff "must adduce competent, admissible evidence."[14] Our Supreme Court has not spoken directly on this issue. However, in construing a statute, which it described as "closely related" to the SLAPP statute, the court held a plaintiff seeking punitive damages against certain health care providers must "demonstrate that he possesses a legally sufficient claim which is 'substantiated,' that is, supported by competent, admissible evidence."[15]

■ As the foregoing cases demonstrate, the proper view of "admissible evidence" for purposes of the SLAPP statute is evidence which, by its nature, is capable of being admitted at trial, i.e., evidence which is competent, relevant and not barred by a substantive rule. Courts have thus excluded evidence which would be barred at trial by the hearsay rule,[16] or because it is speculative, not based on personal knowledge or consists of impermissible opinion testimony.[17] This type of evidence cannot be used by the plaintiff to establish a probability of success on the merits because it could never be introduced at trial. On a SLAPP motion "[a]n assessment of the probability of

---

[12] *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823, 824 [33 Cal.Rptr.2d 446].

[13] *Wilcox v. Superior Court, supra,* 27 Cal.App.4th at page 830.

[14] *Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 614 [129 Cal.Rptr.2d 546]; accord, *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1236 [132 Cal.Rptr.2d 57]; *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1497 [45 Cal.Rptr.2d 624].

[15] *College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 716, 719 [34 Cal.Rptr.2d 898, 882 P.2d 894].

[16] *Wilcox v. Superior Court, supra,* 27 Cal.App.4th at pages 829–830.

[17] *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist, supra,* 106 Cal.App.4th at page 1238.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

prevailing on the claim looks to *trial*, and the evidence that will be presented at that time."[18]

■ Evidence such as the videotape in this case, which is only excludable on the ground it lacks proper authentication, stands on a different footing in terms of its ability to support the plaintiffs' cause of action. Evidence made inadmissible by the hearsay rule, the parol evidence rule or a privilege could never be introduced at trial and therefore could never support a judgment for the plaintiff. But evidence that is made inadmissible only because the plaintiff failed to satisfy a precondition to its admissibility could support a judgment for the plaintiff assuming the precondition could be satisfied. Generally, authentication problems tend to be among the easiest evidentiary dilemmas to overcome once they are called to the party's attention.

■ In most cases it would be a simple matter to have the videographer truthfully testify at trial he shot the original videotape, the tape was edited to conserve the court's time and delete the portions not relevant to this case, he compared the edited version of the tape to the original and the edited version accurately depicts the conduct on the original. Such testimony would establish a prima facie basis for admitting the tape under Evidence Code section 1402.[19]

Given the high probability Fashion 21 would succeed in offering the videotape into evidence at trial and the "minimal" showing necessary to overcome a SLAPP motion,[20] we hold the trial court did not commit reversible error in considering the videotape in determining Fashion 21's likelihood of prevailing on its libel cause of action.

Although we have concluded in this case admitting the edited videotape is not a sufficient ground for reversing the trial court's order denying the SLAPP motion we suggest trial courts in the future should handle rectifiable shortcomings in the evidence by offering the plaintiff a continuance, on conditions the court believes just, to show the predicate facts necessary to overcome the objection. Following this course will save a great deal of judicial and litigant time, effort and expense in both the short and long runs and allow the court to

---

[18] *Evans v. Unkow, supra,* 38 Cal.App.4th at page 1497. Accord, *Roberts v. Los Angeles County Bar Assn., supra,* 105 Cal.App.4th at pages 613–614 ["In assessing the probability of prevailing, a court looks to the evidence that would be presented at trial . . . ."].

[19] CHIRLA of course would be entitled to view the original tape prior to trial and draw its own conclusion about whether the edited version was true to the original. Any dispute over the accuracy of the edited version would be subject to a pretrial determination under Evidence Code section 402.

[20] *Navellier v. Sletten* (2002) 29 Cal.4th 82, 95 [124 Cal.Rptr.2d 530, 52 P.3d 703].

focus on the substantive merits of the plaintiff's cause of action rather than the procedural defects which can occur at this early motion stage but which may be easily cured.

## II. A REASONABLE JUROR COULD INFER FROM THE VIDEOTAPE THAT NARRO DISTRIBUTED THE ALLEGEDLY DEFAMATORY FLIER TO MEMBERS OF THE PUBLIC.

■ The sole evidence to support defendants' distribution of the flyer is the videotape showing some of Narro's activities at the demonstration. After viewing this tape the trial court concluded it constituted sufficient evidence from which a reasonable juror could infer Narro distributed a particular green flyer, which could be found defamatory, at a demonstration in December 2001 at a Forever 21 store in Highland Park. Having reviewed the tape, we agree that at least for the showing of "minimal merit"[21] required to defeat a SLAPP motion, the videotape is sufficient evidence of distribution.

■ "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action."[22] Thus, an inference is not evidence but rather the result of reasoning from evidence. " 'An inference of fact must be based upon substantial evidence, not conjecture. . . . "It must be such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists[.]" ' "[23]

As the trial court and Fashion 21 have conceded, the videotape does not actually show Narro handing a flyer to anyone. It does, however, show him standing on the sidewalk where the demonstration is taking place holding a stack of the offending green flyers. It also shows persons passing by holding and sometimes reading the flyers. The tape further shows Narro arriving at the scene with some of the demonstrators, unloading placards and a banner and mingling with the demonstrators and the public during the demonstration.

CHIRLA points out the videotape shows at least one other demonstrator standing outside the Forever 21 store with a stack of flyers in his hand. Therefore, it argues, the issue of publication should not be allowed to go to the jury because it would be pure conjecture to say the flyers were distributed by Narro when they just as well could have been distributed by the other person or by persons not even shown on the videotape.

---

[21] *Navellier v. Sletten, supra,* 29 Cal.4th at page 95.

[22] Evidence Code section 600, subdivision (b).

[23] *Wigodsky v. Southern Pac. Co.* (1969) 270 Cal.App.2d 51, 55 [75 Cal.Rptr. 419]; italics omitted.

CHIRLA is arguing in essence a jury is only permitted to draw an inference when the supporting evidence is so strong the inference must be found as a matter of law. We disagree. Even "slight evidence" in support of the fact to be inferred has been held to be sufficient.[24] It is up to the jury to assess the credibility and judge the weight of the evidence proffered in support of and in opposition to the fact it is asked to infer.

We believe the evidence showing Narro actively participated in the demonstration, had a stack of the green flyers in his possession and these flyers wound up in the hands of those passing by could, but not necessarily would, lead a reasonable trier of fact to infer Narro distributed at least some of the flyers.

### III. FASHION 21 FAILED TO ESTABLISH A REASONABLE PROBABILITY OF SHOWING THE FALSITY OF DEFENDANTS' STATEMENTS REGARDING ITS RESPONSIBILITY FOR THE WORKERS' WAGES.

Because this case involves matters of public interest, Fashion 21 bears the burden of proving the statements at issue were false.[25]

The trial court found, and we agree, the only evidence of a defamatory publication linked to the defendants was the green flyer distributed by Narro.[26]

The flyer reads as follows: "**BOYCOTT Forever 21/Fashion 21!!** We are 19 garment workers who sewed Forever 21 clothes in factories in downtown Los Angeles without the guarantee of overtime or minimum wage. We worked 10–12 hours a day, in dirty, unsafe factories. We are owed hundreds of thousands of dollars! We asked Forever 21 to take responsibility—pay us and ensure all the factories it uses follow the laws and treat the workers with respect. So far they have refused! Yet Forever 21 will make $400 million in sales! *During this holiday season help us tell Forever 21 to pay us . . . .* **Call Forever 21 at 213 747-2121—tell them to take responsibility! And join us here at the Highland Park store every Saturday at 3pm until Christmas. For more information, call the Garment Worker Center at 1-888-449-6115 or go to www.sweatshopwatch.org.**" (Boldface and italics in original.)

We are skeptical of Fashion 21's argument the flyer can reasonably be interpreted to assert the 19 garment workers were Fashion 21 employees or

---

[24] *Juchert v. California Water Service Co.* (1940) 16 Cal.2d 500, 506 [106 P.2d 886].

[25] *Nizam-Aldine v. City of Oakland* (1996) 47 Cal.App.4th 364, 372–375 [54 Cal.Rptr.2d 781]; and see *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 747 [257 Cal.Rptr. 708, 771 P.2d 406] (dictum).

[26] See discussion in part II, *ante*.

that Fashion 21's "responsibility" is anything other than a moral one. Nevertheless, assuming the average reader would interpret this flyer to state as fact the 19 garment workers were owed back wages and overtime by Fashion 21, to prevail on its defamation claim Fashion 21 must be able to establish this statement was false. For the reasons explained below, Fashion 21 cannot make this showing.

In 1999 the Legislature made major changes in the laws intended to protect garment workers from the hardships and misery of "sweatshop" labor including such abuses as not being paid minimum wage, not being paid overtime and all too frequently not being paid at all.[27] Although there were already laws on the books making employers responsible for the payment of wages to their employees these laws proved difficult to enforce against sweatshops because these operations frequently hide assets, declare bankruptcy, and close down only to reopen in new locations under new names.[28] To address this problem, the Legislature enacted Labor Code section 2673.1, which makes persons engaged in "garment manufacturing" liable for payment of wages to employees of their contractors.[29] An aggrieved employee can enforce a claim for unpaid wages against the contractor and the garment manufacturer through an administrative proceeding in the Department of Labor.

At the same time it enacted section 2673.1 the Legislature amended the definition of "garment manufacturing" in Labor Code section 2671, subdivision (b) to provide in relevant part: " 'Garment manufacturing' means sewing, cutting, making, processing, repairing, finishing, assembling, or otherwise preparing any garment or any article of wearing apparel . . . for sale or resale by any person or any persons contracting to have those operations performed . . . ."

The Labor Commissioner interprets the term "garment manufacturing" in Labor Code section 2671, subdivision (b) to apply not only to businesses which actually engage in garment making operations such as

[27] A "sweatshop" is generally understood to mean a workplace, especially one engaged in the manual labor of garment making, which requires long hours at low pay with no breaks in unsafe and unsanitary conditions. (Goldstein et al., *Enforcing Fair Labor Standards in the Modern American Sweatshop: Rediscovering the Statutory Definition of Employment* (1999) 46 UCLA L.Rev. 983, 1055–1057.)

[28] Comment, *State Joint Employer Liability Laws And Pro Se Back Wage Claims In The Garment Industry: A Federalist Approach To A National Crisis* (2001) 49 UCLA L.Rev. 395, 401.

[29] Labor Code section 2673.1, subdivision (a) states: "To ensure that employees are paid for all hours worked, a person engaged in garment manufacturing, as defined in section 2671, who contracts with another person for the performance of garment manufacturing operations shall guarantee payment of the applicable minimum wage and overtime compensation, as required by law, that are due from that other person to its employees that perform those operations."

sewing, cutting, finishing and assembling but also to businesses which"contract to have those operations performed."[30] In the commissioner's view "a business that contracts to have garment manufacturing operations performed [has a] statutory obligation to guarantee the minimum wages and overtime wages of the contractor's employees."[31] The Attorney General has filed an amicus curiae brief in this appeal supporting the commissioner's statutory interpretation.[32]

 Under the commissioner's interpretation, a retailer which simply purchases apparel items from a manufacturer and sells them in its store would not be liable for the wages of the manufacturer's employees. But a retailer who contracts with a manufacturer to produce a particular line of apparel according to the retailer's specifications or to put the retailer's label on a particular line of apparel produced by the manufacturer would be liable for the wages of the manufacturer's employees. In the case before us we do not have to reach the question whether the retailer's liability only extends to the manufacturer's employees (second tier workers) or whether it also extends to employees of subcontractors of the manufacturer (third tier workers). Fashion 21 presented no evidence the 19 garment workers referred to in the flyer were anything but second tier workers.

Several of the garment workers on whose behalf CHIRLA staged demonstrations filed declarations in support of the SLAPP motion. In these declarations they assert they made garments specifically for sale in Forever 21 stores and name the company for whom they worked. Vitaliana Varela, for example, testified she was employed by Nare Fashions where she trimmed garments bearing the label Forever 21, which she observed were shipped and sold to the public in Forever 21 stores. Varela states she was not paid minimum wage or overtime for trimming these garments although she worked an average of 10 hours a day at the Nare factory. Arceli Castro testified she also worked an average of 10 hours a day at Nare Fashions ironing garments. She stated, "All of the clothing I ironed for the factory bore the 'Forever 21' label associated with Forever 21 retail clothing stores." The clothing she ironed was shipped to Fashion 21 stores and sold to the public. Castro alleges she did not receive minimum wage or overtime for her work.

---

[30] Labor Commissioner, Final Statement of Reasons, proposed amendment and adoption of regulations to implement the provisions of Assembly Bill No. 633 and other statutes governing enforcement of minimum wage and overtime requirements in the garment industry, and the registration of persons engaged in garment manufacturing (1999) page 8; herafter Statement of Reasons.

[31] Statement of Reasons, *supra*, at page 8.

[32] For obvious reasons the Commissioner and the Attorney General take no position on the factual question whether Fashion 21 was engaged in garment manufacturing with respect to the garment workers referred to in the flyer at issue in this case.

Fashion 21 did not dispute the truth of the facts asserted in these declarations which we take to be typical of the experiences of the other garment workers referred to in the flyer. More significantly, Fashion 21 did not submit evidence showing Nare Fashions was *not* a manufacturer with whom Fashion 21 contracted to have garment manufacturing operations performed. Fashion 21 obviously knew whether Nare was one of its manufacturers. Its failure to produce any evidence on this issue, an issue on which it would bear the burden of proof at trial, leads us to conclude Fashion 21 does not have a reasonable probability of success on its defamation cause of action because it cannot prove the statements in the flyer were false.[33] On the contrary, based on the commissioner's interpretation of Labor Code sections 2671 and 2673.1 and the facts stated by Varela and Castro, it appears for purposes of the SLAPP motion Fashion 21 is liable for the wages owed to garment workers such as Varela and Castro because it contracted with Nare Fashions to perform garment manufacturing operations on its behalf including the trimming and sewing of garments bearing the Fashion 21 label and sold in Fashion 21 stores.[34]

Fashion 21, of course, disagrees with the commissioner's interpretation of Labor Code section 2671. This is another issue we need not resolve here. Even if an appellate court should overrule the commissioner's interpretation of the statute sometime in the future, at the time defendants distributed the flyer at issue in this case the commissioner's statutory interpretation would have been applied to any claim brought against Fashion 21 under the wage guaranty provisions of Labor Code section 2673.1.

### IV. *FASHION 21 FAILED TO ESTABLISH A REASONABLE PROBABILITY OF PREVAILING ON ITS UNFAIR COMPETITION CLAIM.*

Fashion 21 seeks injunctive relief under California's unfair competition law, Business and Professions Code section 17200, et sequitur. It contends defendants' false statements it owes hundreds of thousands of dollars to the workers who sewed its clothes is an unlawful business practice.

Because we have determined Fashion 21 did not show a reasonable probability of proving the falsity of the defendants' statement the unfair competition claim fails.

---

[33] Fashion 21 submitted declarations describing the operation of the garment industry in general, which suggests persons who trim and iron garments may be third tier workers. It produced no admissible evidence, however, showing Varela, Castro or any of the other 19 garment workers were in fact third tier workers.

[34] We emphasize our conclusion is solely for the purpose of determining the SLAPP motion. It is not binding on Fashion 21, the garment workers or the Labor Commissioner in an administrative proceeding to determine Fashion 21's liability under the wage guarantee statute. That determination must be made based on the evidence presented at the hearing.

## V. *FASHION 21 HAS FAILED TO ESTABLISH A REASONABLE PROBABILITY OF PREVAILING ON ITS NUISANCE CAUSE OF ACTION.*

 Nuisance is the interference "with the comfortable enjoyment of life or property."[35] In order to recover damages for nuisance the plaintiff must prove the defendant's "invasion of the plaintiff's interest in the use and enjoyment of the [property] was *substantial*, i.e., that it caused the plaintiff to suffer 'substantial actual damage.' "[36] The interference " 'must also be *unreasonable*.' "[37] The test for determining whether the plaintiff has suffered an unreasonable interference with the use and enjoyment of his property "is whether the gravity of the harm outweighs the social utility of the defendant's conduct."[38]

In the present case the trial court ruled Fashion 21 had established a reasonable probability of prevailing on its nuisance cause of action against defendants because the videotape showed Narro distributing the alleged defamatory flyer in front of a Forever 21 store and "there is no social utility in handing out defamatory flyers in front of plaintiff's store."

We have held Fashion 21 has no reasonable probability of showing the flyer was defamatory. But even if it was defamatory, this would not be enough to establish a cause of action for nuisance. Fashion 21 must also show distribution of the flyer caused it to suffer substantial actual damage to the use and enjoyment of its property. It offered no evidence to support a finding of such damage. The videotape does not show Narro, or any of the demonstrators, blocking the entrance to any Forever 21 store or interfering with customers attempting to enter the stores nor does it show Narro chanting, whistling, or making any sound whatever during the demonstration.

 Chang's declaration alleges "defendants have blocked access to my stores" but this vague allegation is insufficient to show Fashion 21 can establish Narro or any employee of CHIRLA blocked access to the stores. Furthermore, Chang's only allegation of damage is "damage [to] my reputation and the reputation and goodwill of Fashion 21." Damage to reputation is not recoverable in a nuisance action.[39]

---

[35] Civil Code section 3479.

[36] *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 938 [55 Cal.Rptr.2d 724, 920 P.2d 669].

[37] *San Diego Gas & Electric Co. v. Superior Court, supra,* 13 Cal.4th at page 938.

[38] *San Diego Gas & Electric Co. v. Superior Court, supra,* 13 Cal.4th at page 938.

[39] Civil Code section 3479.

We conclude, therefore, Fashion 21 did not establish a reasonable probability of success on its nuisance claim and the SLAPP motion should have been granted as to this cause of action.

## DISPOSITION

The order denying the SLAPP motion is reversed. The trial court is directed upon remand to vacate its order and issue a new and different order striking plaintiffs' complaint against CHIRLA and Narro and awarding them costs and attorney fees in accordance with Code of Civil Procedure section 425.16, subdivision (c).

Appellants are awarded their costs on appeal.

Perluss, P. J., and Woods, J., concurred.

A petition for a rehearing was denied May 18, 2004, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied August 18, 2004. Chin, J., did not participate therein.