Filed 7/16/15  Yoon v. Jeju Special Self-Governing Province Development Corp. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| DONNA HYUNBIN YOON,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>JEJU SPECIAL SELF-GOVERNING PROVINCE DEVELOPMENT CORP.,<br><br>  Defendant and Respondent. | 2d Civil No. B255584<br>(Super. Ct. No. CIV 56-2013-00441980-CU-BT-VTA)<br>(Ventura County) |

Appellant Donna Hyunbin Yoon prevailed in a breach of contract action filed by Jeju Provincial Development Corp. (JPDC), the predecessor in interest to respondent Jeju Special Self-Governing Province Development Corp.[1]  Yoon sued JPDC for malicious prosecution.  The trial court granted JPDC's motion to strike the complaint under the anti-strategic lawsuit against public participation (anti-SLAPP) statute, Code of Civil Procedure section 425.16.[2]  It determined Yoon had failed to demonstrate a probability of prevailing on her claim.

Yoon contends the trial court abused its discretion by sustaining all of JPDC's objections to her evidence.  She asserts she presented sufficient admissible

_____

[1] For ease of reference, we also refer to respondent as JPDC.

[2] All statutory references are to the Code of Civil Procedure.

evidence from which it can be inferred that JPDC filed the underlying action without probable cause and with malice, two of the elements necessary to prevail on a malicious prosecution claim. We conclude the court improperly excluded the deposition testimony of three of JPDC's employees in the underlying action (see § 2025.620, subds. (a), (b), (g)), and that this evidence satisfies Yoon's burden of demonstrating a probability of prevailing on her claim. We reverse and remand.

FACTS AND PROCEDURAL BACKGROUND

Yoon operated an export business in California, known as ANA Export Company (ANA). She had a business relationship with the government of Jeju, South Korea, which is an autonomous island province known for its orchids. When the government purchased a nursery in Somis to cultivate Jeju orchid seedlings for sale in the United States, it formed American Cheju Trading Co. (ACTC) to manage the nursery. Yoon became ACTC's exclusive United States orchid distributor.

In January 2004, JPDC succeeded ACTC as the nursery's management company. Yoon continued to purchase orchids from JPDC until August 2005, when JPDC demanded $66,453.50 for unpaid July and August invoices. Yoon claimed she was entitled to a credit for unfilled orders and un-saleable orchids. The business relationship ended on September 1, 2005, when Yoon made a final $28,198 payment.

*JPDC Sues Yoon; Yoon Cross-Complains*

A year later, JPDC sued Yoon for breach of contract, goods sold and delivered and open book account, claiming she owed $120,271.65 for prior orchid purchases. Soo Nam Ko, who was in charge of the nursery, retained attorney John Choi to file the action. Before the original trial date, Choi moved to be relieved as JPDC's counsel. He declared that "[t]he attorney-client relationship has broken down for the following reasons: The client failed to inform me of material facts regarding this case and my initial evaluation was incorrect. Information recently disclosed, including deposition testimony taken approximately one week from the date of this declaration, has substantively altered my view of this case and I can no longer discharge my duties

2

faithfully to the client and respectfully request that the Court relieve me of further representation."  The motion was granted.

One of JPDC's managers, Bang Eun Kim, testified during his deposition that Yoon was overcharged for orchid purchases between January and August 2004 and that he had proposed to offer her approximately 9,000 free plants to compensate for the overcharges.  Ko testified during his deposition that in August 2005 he prepared and sent a letter (exh. 54) to Yoon which stated she owed $66,453.50 for July/August deliveries.  The letter included an invoice summary for sales between April and August 2005.  The summary reflected a zero balance as of June 29, 2005, and 26 purchases after that date totaling $66,453.50.

Another JPDC employee, Ik Heo, testified during his deposition that JPDC and Yoon settled the account on September 1, 2005.  He identified a $28,198 check signed by Yoon as the "check that was given to settle the account."  At the bottom of the check, Yoon wrote, "zero balance as of 8-31-05."  A few months after that "transaction was over," Ko prepared an aging statement for Yoon's account (exh. 50).  Unlike the earlier invoice summary, this statement reflected a balance due of $120,271.65.

The bench trial lasted 21 days, primarily due to translation issues.  Judge Frederick H. Bysshe entered judgment for Yoon on both the complaint and cross-complaint, awarding her $394,013 in damages for JPDC's breach of their exclusive distributorship agreement.  Judge Bysshe concluded that Yoon's $28,198 payment constituted an accord and satisfaction of JPDC's claims.  He stated:  "[T]his is not one of those difficult cases shaded in gray where there are disputes based upon innocent mis-recollection, but rather [it is] one in sharp contrasts of black and white where there is a series of significant controversies in which one side's witnesses and evidence represent[] the essential truth of what occurred and the other side is distorting the truth by lies and deception."  We affirmed the judgment.  (*JPDC v. Yoon* (July 25, 2011, B221819) [nonpub. opn.].)  The remittitur issued on September 27, 2011.

3

*Yoon Sues for Malicious Prosecution*

On September 12, 2013, Yoon filed this action for malicious prosecution. JPDC filed an anti-SLAPP motion supported by declarations from Ko and the current nursery manager. They declared that the underlying action was the result of a business decision to collect an outstanding debt. Yoon opposed the motion and filed evidentiary objections to the declarations. JPDC, in turn, objected to most of the evidence submitted by Yoon, including Judge Bysshe's statement of decision, Choi's declaration seeking to be relieved as counsel and deposition testimony given by Yoon, Kim, Ko and Heo in the underlying action.

The day after JPDC's objections were filed, Yoon submitted evidence to cure certain evidentiary defects identified by JPDC. When the matter was heard a week later, the trial court stated: "There are a lot of objections that have been made on both sides. I haven't gotten to those. I'm going to take this under submission."

The trial court issued an order and judgment granting the anti-SLAPP motion and awarding $7,600 in attorney fees to JPDC. Sustaining all of JPDC's evidentiary objections, the court found that Yoon had failed to meet her burden of submitting admissible evidence sufficient to establish malice and lack of probable cause. It determined that she had raised a "colorable argument" that the deposition testimony of Kim, Ko and Heo is admissible under section 2025.620, subdivisions (b) and (g), but failed to demonstrate they were employees of JPDC when they were deposed. The court recognized that Yoon "attempt[ed] to cure these problems by submitting a 'sur reply,'" but rejected it as untimely. Yoon appeals.

## DISCUSSION

*The Anti-SLAPP Statute and Standard of Review*

"Section 425.16 provides an expedited procedure for dismissing lawsuits that are filed primarily to inhibit the valid exercise of the constitutionally protected rights of speech or petition." (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1292.) "The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First

4

Amendment rights. (§ 425.16, subd. (a).)" (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 883.)

To assess whether dismissal is required under section 425.16, the court first must determine if the lawsuit falls within the scope of the anti-SLAPP statute. (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1476.) A cause of action is governed by this statute if it arose from activities that were in furtherance of the moving party's free speech or petition rights. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Once this prong is met, the burden shifts to the opposing party to demonstrate "a probability of prevailing on the claim." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).)

Yoon concedes that her malicious prosecution claim necessarily arises from constitutionally protected activity, i.e, the filing of the underlying lawsuit (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734, 735), and that she has the burden of demonstrating a probability of prevailing on her claim. She further acknowledges that to make this showing, she must submit evidence that would be admissible at trial. (*Greene v. Bank of America* (2013) 216 Cal.App.4th 454, 457-458; *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1147 (*Fashion 21*) ["'admissible evidence' for purposes of the SLAPP statute is evidence which, by its nature, is capable of being admitted at trial, i.e., evidence which is competent, relevant and not barred by a substantive rule"].) Nonetheless, the "burden of establishing a probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.) The plaintiff need only show a "minimum level of legal sufficiency and triability" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 438, fn. 5), or a case of "'minimal merit.'" (*Navellier, supra,* 29 Cal.4th at p. 95, fn. 11; *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 824-825

(*Wilcox*), overruled on other grounds in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 68, fn. 5.)

Our review of the trial court's order on an anti-SLAPP motion is de novo. (*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047; *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 214.) We review the court's ruling on evidentiary objections for abuse of discretion. (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1348, fn. 3; *Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424, 1444.)

*Exclusion of Evidence*

To prevail on her malicious prosecution claim, Yoon must show that the underlying action was (1) commenced by or at the direction of JPDC and terminated in her favor, (2) brought without probable cause, and (3) initiated with malice. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292; *Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 760.) It is undisputed that the underlying action was commenced by JPDC and pursued to a legal termination favorable to Yoon. To demonstrate that the action was brought without probable cause and with malice, Yoon submitted the deposition testimony of Kim, Ko and Heo taken in the underlying action, her own deposition testimony, Judge Bysshe's findings and Choi's declaration. Yoon contends the trial court improperly excluded this evidence as inadmissible hearsay, and abused its discretion by declining to consider the evidence she submitted to cure the evidentiary deficiencies identified in JPDC's objections. We conclude the court should have considered the curative evidence and, as a consequence, denied the anti-SLAPP motion.

In *Fashion 21, supra,* 117 Cal.App.4th at page 1148, the trial court considered an unauthenticated videotape in deciding that the plaintiff had satisfied its burden of showing a probability of prevailing on its claim. The defendants argued this was error because the unauthenticated tape would be inadmissible at trial. (*Ibid.*) The Court of Appeal disagreed, stating "evidence that is made inadmissible only because the plaintiff failed to satisfy a precondition to its admissibility could support a judgment for the plaintiff assuming the precondition could be satisfied." (*Ibid.*) Noting the "high

6

probability [the plaintiff] would succeed in offering the videotape into evidence at trial," the court concluded the trial court did not commit reversible error. (*Ibid.*) Nonetheless, it admonished "trial courts in the future [to] handle rectifiable shortcomings in the evidence by offering the plaintiff a continuance, on conditions the court believes just, to show the predicate facts necessary to overcome the objection. Following this course will save a great deal of judicial and litigant time, effort and expense in both the short and long runs and *allow the court to focus on the substantive merits of the plaintiff's cause of action rather than the procedural defects which can occur at this early motion stage but which may be easily cured*." (*Id.* at pp. 1148-1149, italics added; see *Malibu Committee for Incorporation v. Board of Supervisors* (1990) 222 Cal.App.3d 397, 408 ["the law strongly favors important decisions being made on their merits"].)

Although trial courts generally have broad discretion in ruling on evidentiary objections (*Korsak v. Atlas Hotels, Inc.* (1992) 2 Cal.App.4th 1516, 1523), we agree that courts should refrain from excluding evidence on procedural grounds when the evidentiary deficiency may be easily cured and its exclusion will result in early dismissal of the case. (*Fashion 21, supra*, 117 Cal.App.4th at pp. 1148-1149.) Here, JPDC objected to the deposition testimony of Kim, Ko and Heo taken in the underlying action, claiming it is inadmissible under section 2025.620. Subdivision (g) of that statute states that "[w]hen an action has been brought in any court of the United States or of any state, and another action involving the same subject matter is subsequently brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the initial action may be used in the subsequent action as if originally taken in that subsequent action." The underlying action involves the same parties and subject matter; therefore, the depositions in that action may be used as if originally taken in the current malicious prosecution action. (§ 2025.620, subd. (g).) In other words, the depositions may be treated as if they occurred in this case.[3] (*Ibid.*)

---

[3] JPDC suggests, without discussion, that section 2025.620, subdivision (g), does not apply because Yoon failed to show that the deposition transcripts were "duly filed" in the underlying action. Section 2025.550, subdivision (a), states that "[t]he certified transcript of a deposition shall not be filed with the court. Instead, the deposition officer

7

The trial court acknowledged that the depositions of Kim, Ko and Heo may be admissible under section 2025.620, subdivision (b), which allows "[a]n adverse party [to] use for any purpose, a deposition of a party to the action, or of anyone who at the time of taking the deposition was an . . . employee . . . of a party," regardless of whether the deponent is available to testify. (See *Haluck v. Ricoh Electronics, Inc.* (2007) 151 Cal.App.4th 994, 1005.) The court declined, however, to consider the evidence because Yoon failed to show that Kim, Ko and Heo were employees of JPDC when they were deposed.

The day after JPDC's evidentiary objections were filed, Yoon submitted evidence confirming that Kim and Heo were employed by JPDC at the time of their depositions. Based on the principles set forth in *Fashion 21,* we conclude the trial court should have considered this evidence. (*Fashion 21, supra,* 117 Cal.App.4th at pp. 1148-1149.) The deficiency was cured promptly, the hearing was a week later, and the court did not rule on the objections until after the hearing. Moreover, although JPDC objected to the court's consideration of the evidence, it did not dispute that Kim and Heo were employees when they were deposed. Under these circumstances, the trial court's decision to exclude their deposition testimony on a procedural technicality constituted an abuse of discretion. (See *Fashion 21, supra,* at pp. 1148-1149.)

Unlike Kim and Heo, Ko was not employed by JPDC at the time of his deposition. Yoon asserted in her response to the evidentiary objections that his testimony is admissible under section 2025.620, subdivision (a), which states that "[a]ny party may use a deposition for the purpose of contradicting or impeaching the testimony of the deponent as a witness . . . ." Ko's declaration, filed in support of the anti-SLAPP motion, states the underlying action was the result of a business decision to collect an outstanding debt. Presumably, Ko will give the same testimony at trial, and Yoon will be permitted

_____

. . . shall promptly transmit it to the attorney for the party who noticed the deposition." When a statute or rule prohibits the filing of deposition transcripts with the court, the transcript is "duly filed" when it has been delivered to the attorney for the party who noticed the deposition. (See *In re Paramount Payphones, Inc.* (Bankr. M.D.Fla. 2000) 256 B.R. 341, 345-346.) Yoon's attorney submitted a declaration stating he took the depositions of Kim, Ko and Heo and received the transcripts.

8

to impeach that testimony with his deposition in the underlying action. (§ 2025.620, subd. (a).) Because the evidence is capable of being admitted at trial, we conclude that it, too, should have been considered. (*Fashion 21, supra,* 117 Cal.App.4th at p. 1147.)

Given our de novo review, we must analyze whether consideration of this evidence compels a different result. In so doing, we do not consider Judge Bysshe's findings, Choi's declaration or Yoon's own deposition testimony. Yoon has presented no persuasive basis for admitting her deposition and, as a general rule, courts may not take judicial notice of hearsay statements in a court file, including factual findings. (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 484; *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1564-1569.) We need not reach these issues, however, because the deposition testimony of Kim, Ko and Heo is sufficient to satisfy Yoon's burden of showing malice and lack of probable cause, particularly when it is considered with the exhibits that they authenticated and which were admitted at trial. (See *Navellier, supra,* 29 Cal.4th at p. 95, fn. 11; *Wilcox, supra,* 27 Cal.App.4th at pp. 824-825.)

*Probability of Prevailing on Claim*

"A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 164-165.) The filing of a lawsuit that objectively lacks probable cause may be "circumstantial evidence" of malice (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1113-1114 (*Cole*)), but it is not enough by itself to prove malice. A malicious prosecution plaintiff must adduce "additional proof" that the earlier action was (1) "knowingly brought without probable cause" (*ibid.*; *Sycamore Ridge Apartments, LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1407-1408 [subjective awareness of meritlessness]); (2) "instituted largely for an improper purpose" (*Cole*, at pp. 1113-1114); or (3) "brought to force a settlement unrelated to its merits" (*ibid.*; see *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1544).

The complaint in the underlying action alleged that "[w]ithin two years . . . prior to the commencement of this suit, [Yoon] became indebted to [JPDC] on an open

9

book account for money due in the amount of $120,271.65," plus interest. Ko, who retained Choi to file the lawsuit, testified that he prepared and sent Yoon a letter dated August 17, 2005, requesting payment for orchids shipped in July and August in the amount of $66,453.50. The letter included an invoice summary for the period April through August 2005 which confirmed that no balance was due as of June 29, 2005, and that the $66,453.50 was for orders invoiced beginning July 5, 2005. The letter also mentioned the parties' "conflicts of opinions" regarding earlier payments, apparently referencing Yoon's claim to a refund for previous overcharges. Kim testified that Yoon was in fact overcharged for shipments between January and August 2004 and that he had proposed to give her free plants as compensation.

Heo testified that he was present at a meeting with Yoon on September 1, 2005, in which Yoon provided a $28,198 check to "settle the account." The check, which JPDC negotiated, contains the handwritten notation "zero balance as of 8-31-05." A few months later, Ko prepared an aging statement for Yoon's account for the period January 2004 through August 2005. The statement, which served as the basis for the underlying action, reflected a balance due of $120,271.65 after deduction of the final $28,198 payment. As Yoon points out, this document is wholly inconsistent with the account summary Ko provided to her on August 17, 2005, which stated the account was current except for the $66,453.50 due for the July/August deliveries. It also is inconsistent with Heo's testimony that the account was "settled" when Yoon made the September payment. Moreover, it did not factor in the 2004 overcharges.

A reasonable inference from this evidence is that Ko knew the accounting in his aging statement was inaccurate and that, in authorizing the filing of the action, he relied "upon facts which he ha[d] no reasonable cause to believe to be true." (*Sangster v. Paetkau, supra*, 68 Cal.App.4th at pp. 164-165.) If the complaint had, for example, sought $38,255.50 -- the difference between the $66,453.50 owed for the July/August shipments and the $28,198 final payment -- it arguably could be inferred that Ko, unlike Heo, did not believe Yoon had settled her account. But for JPDC to claim a year after Yoon made the final $28,198 payment that $120,271.65 (plus interest) remained due

10

supports a reasonable inference that the action was initiated not only without probable cause, but also for an improper purpose, such as forcing a monetary settlement unrelated to the claim's merits. (*Cole, supra*, 206 Cal.App.4th at pp. 1113-1114; *Jay v. Mahaffey, supra,* 218 Cal.App.4th at p. 1544.)

JPDC offers no explanation for the discrepancy between Ko's admission in August 2005 that Yoon owed $66,453.50 before the $28,198 payment and his determination that she owed $120,271.65 thereafter. In any event, JPDC cannot defeat Yoon's evidentiary showing by presenting evidence that merely contradicts her evidence. It must establish as a matter of law that she cannot prevail. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) It has not met that burden.

The anti-SLAPP statute is not intended to jeopardize meritorious actions. (See *S.B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 380.) Yoon has submitted sufficient admissible evidence that, if believed by the trier of fact, could support a judgment in her favor on the malicious prosecution claim. (*Plumley v. Mockett, supra*, 164 Cal.App.4th at pp. 1047-1048.) Accordingly, we conclude the action is not a SLAPP and that the trial court erred by finding otherwise.

## DISPOSITION

The order granting the special motion to strike and the subsequent judgment awarding attorney fees to JPDC are reversed. The matter is remanded to the trial court with instructions to deny the motion. Yoon shall recover her costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:



GILBERT, P. J.



YEGAN, J.


11

Henry Walsh, Judge

Superior Court County of Ventura

_____

Kozberg & Bodell, Gregory Bodell for Plaintiff and Appellant.

Law Offices of Barry G. Florence, Barry G. Florence; Richard S. Kim & Associates, Richard S. Kim for Defendant and Respondent.