[601 NYS2d 606]

Brian M. Freeman, Respondent-Appellant, v Moira Johnston, Appellant-Respondent, et al., Defendant.

First Department, August 19, 1993

## APPEARANCES OF COUNSEL

*Jonathan W. Lubell* and *Arlene R. Smoler* of counsel *(Morrison Cohen Singer & Weinstein,* attorneys), for respondent-appellant.

*Slade R. Metcalf* of counsel *(Mark H. Jackson* with him on the brief; *Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin,* attorneys), for appellant-respondent.

## OPINION OF THE COURT

KUPFERMAN, J.

Defendant Johnston is the author of "Takeover: The New Wall Street Warriors—The Men, The Money, The Impact" (Takeover). One of the corporate takeover battles described in the book is the struggle for control of Trans World Airlines (TWA) between Carl Icahn and Frank Lorenzo, ultimately won by Icahn. In the age of Milken & Boesky, such struggles are a staple in the book market. See, among others, "Barbarians at the Gate", the book and the made-for-television movie, detailing the struggle for RJR-Nabisco.

Plaintiff Freeman, a lawyer, acted as financial advisor for the International Association of Machinists, one of the two labor unions (the other being the Airline Pilots Association), which took part in the negotiations over TWA's future ownership.

Freeman was concededly present for part of the meeting in August of 1985 of the TWA board of directors at which control was determined.

In describing events at the meeting, Takeover contains the following statement: "Brian Freeman, the lawyer who represented the machinists, compounded the threats of strike, warning that being sold into bondage to Lorenzo would provoke night time trashing of airplanes and other sabotage."

It is contended that the statement was false and "conveyed

the defamatory meanings that plaintiff threatened, condoned and encouraged his clients' likely commission of acts of physical sabotage and other illegal conduct."

Freeman has a distinguished background and record in tax law and has worked in government and industry in the Washington, D.C. area, although he is now based in New Jersey. He is conceded to be a public figure.

The defendant, Johnston, is a writer who specializes in exhaustively researching books about business affairs and the transportation industry in particular.

The standard for defamation here is the constitutional malice standard. *(New York Times Co. v Sullivan,* 376 US 254; *Curtis Publ. Co. v Butts,* 388 US 130, *rehg denied* 389 US 889.)

It is alleged, therefore, that Johnston acted in a grossly irresponsible manner with reckless disregard for the truth.

James Freund, Esq., of Skadden, Arps, Slate, Meagher & Flom, acted as counsel to the TWA board and was present at the meeting where Freeman and Captain Harry Hoglander, an airline pilot and longtime TWA employee and the then chairman of the Master Executive Council of the Airline Pilots Association, spoke to the board.

Johnston's two principal sources for the reference to Freeman in the book are Messrs. Hoglander and Freund.

Naturally, there is a dispute as to the meaning of what was said at the meeting. Based upon Hoglander's version, plaintiff's utterance of the statement itself is clearly substantiated. Freund is more conservative in his assessment of its meaning, saying that Freeman's analysis for the board, compared to Hoglander's, was "no big deal". Others who might have given a different version were not interviewed.

While it is problematical whether the machinists would have acted as stated, the only issue for us is whether Freeman adopted such predicted sabotage and used it as a threat.

■ Not only is there no constitutional malice, the author having properly researched and, at most, come up with a possibly mistaken inference, but an objective consideration of the function of Freeman at the meeting leads to the conclusion that the statement attributed to Freeman is a privileged description of the attitudes of the union membership he represented, and not a blanket endorsement of illegal activity by a lawyer, as plaintiff urges.

Lorenzo was concededly anathema to the union. Even today,

years later, he is viewed with suspicion by them *(Old Labor Foes Dog Lorenzo's Return to the Skies,* NY Times, May 27, 1993, § D, at 8, col 1).

A lawyer must consider the clients' requirements and needs. *(See,* Code of Professional Responsibility Canon 7, *and* EC 7-8.)

Bearing this in mind, we cannot conclude that there was a "high degree of awareness of * * * probable falsity" of the statement in the publication *(see, Garrison v Louisiana,* 379 US 64, 74). Nor, can we say that the defendant entertained, or even should have entertained, serious doubts as to the truth of the statement *(St. Amant v Thompson,* 390 US 727, 731; *see generally,* Driscoll and Youm, *Harte-Hanks Communications v. Connaughton: The U.S. Supreme Court's Application of the Actual Malice Rule,* 14 Comm & L 57, 62 [Mar. 1992]).

■ We, of course, agree with the determination dismissing the third cause of action for false light invasion of privacy inasmuch as the motion court correctly concluded that New York law applies to such claim and this State does not recognize such a tort *(see, Arrington v New York Times Co.,* 55 NY2d 433, 442).

Accordingly, the order of the Supreme Court, New York County (Diane S. Lebedeff, J.), entered March 19, 1993, insofar as it denied defendant-appellant's motion for summary judgment dismissing the first cause of action for defamation and granted her motion for summary judgment dismissing the third cause of action for false light invasion of privacy, should be modified, on the law, to the extent of granting defendant-appellant's motion for summary judgment in its entirety and dismissing the first cause of action for defamation and, as so modified, the order should otherwise be affirmed, without costs.

Ross, J. (dissenting). I dissent and would affirm. Questions of material fact exist, based upon which a jury could find that defendant-appellant Johnston exhibited actual malice in writing the alleged defamatory statement *(see, Dally v Orange County Publs.,* 117 AD2d 577, 578-579). While Johnston's reliance on two first-hand sources was appropriate to conclude that plaintiff had conveyed to the TWA board of directors the possibility that the union machinists would engage in sabotage, the sources' statements do not appear to support the conclusion that plaintiff had expressed his *condonation* of such behavior. Since Johnston's phrasing of the reference to plaintiff in her book is susceptible of the latter defamatory inter-

pretation, a jury could find that she had exhibited a reckless disregard for the truth in suggesting to her readers, without foundation, that plaintiff had condoned the threat of criminal acts on the part of the union members.

Further, the trial court correctly concluded that the substantive law of New York applies to plaintiff's claim for false light invasion of privacy. Since this State does not recognize such a tort, the third cause of action was properly dismissed.

WALLACH, J. P., and KASSAL, JJ., concur with KUPFERMAN, J.; Ross, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered on or about March 19, 1993, modified, on the law, to the extent of granting defendant-appellant's motion for summary judgment in its entirety and dismissing the first cause of action for defamation and, as so modified, affirmed, without costs.