OPINION OF THE COURT
Carol H. Arber, J.
Defendants, N.Y.P. Holdings, Inc. (NYP) and Jack Newfield (Newfield), move for summary judgment, pursuant to CPLR 3212, for an order dismissing the complaint in its entirety. The plaintiffs Minister Louis Farrakhan, and the Nation of Islam (NOI) oppose the motion and cross-move to renew their motion for a protective order to prevent the deposition of plaintiff, Minister Farrakhan.
STATEMENT OF FACTS
This libel action arises out of an article which appeared in the March 12, 1994 issue of the New York Post, with the headline "Widow Pins Malcolm X Murder On Farrakhan” (the Article). The Article reported on an interview which Dr. Betty Shabazz had recently given to NBC news reporter Gabe Pressman, which was to be aired the following day on the television program News Forum. The Article reported that during her interview with Mr. Pressman, Dr. Shabazz accused Nation of Islam leader Louis Farrakhan of complicity in the assassination of her husband in 1965.
THE COMPLAINT
Plaintiffs commenced the instant action against defendants on or about March 15, 1994. The complaint alleges that the Article is defamatory per se because "the actions attributed to the plaintiff constitute a crime punishable by law”, and that "the words connect the plaintiff Minister Farrakhan and the plaintiff Nation of Islam and its Mission and do them extreme harm, by referring to Minister Farrakhan in his capacity as a spiritual leader so as to impute criminal and immoral actions to him”. The complaint further alleges that "[s]ince 1984, Defendants have had a history of malicious attacks against plaintiffs, and have engaged in a pattern of publishing false stories regarding the plaintiffs, that are totally void of evidence or reason”. It also alleges that "[t]he subject matter of the article, in addition to being patently erroneous, is presented in a manner calculated to appear new and newsworthy, while it is in fact based upon the deliberate misuse of information that is nearly thirty years old”.
*538 The complaint alleges, on behalf of the NOI, that as a result of the Article, the NOI "sustained actual injury in the form of immediate threat of danger to the life, liberty and character of its Leadership and the interference with the redemption and salvation of its members in the person of Minister Louis Farrakhan”. The complaint seeks compensatory damages, on behalf of the NOI, in the amount of $2,000,000,000 and punitive damages in the amount of $2,000,000,000. The complaint also seeks punitive damages in the amount of $200,000,000.
THE PARTIES
According to the complaint, Farrakhan is "the National Representative of the Honorable Elijah Muhammad” and he is also "the Leader of all members of the lost nation of islam in the west, both registered and unregistered”. Plaintiffs further allege that Farrakhan is a "voluntary public figure” for purposes of this lawsuit.
Plaintiffs allege that the NOI is registered as "Muhammad Holy Temple of Islam, Inc.” and is "a religious and charitable entity with a charter under the laws of the State of Illinois and with an affiliate mosque located in New York, New York, [and] has its headquarters in Chicago, Illinois”.
Jack Newfield is a columnist for the Post, and he researched and wrote the challenged Article. Newfield began his career in 1964 as an investigative reporter for the Village Voice, where he became a Senior Editor in 1977. He has also worked as a columnist for the Daily News. Newfield has written numerous articles about Minister Farrakhan and the NOI, and claims to have extensive knowledge of Minister Farrakhan and the NOI, and the circumstances surrounding the assassination of Malcolm X.
In addition, Newfield has authored books, and a script for a documentary film concerning the boxing industry. He has won several awards for his journalist endeavors.
NYP is the corporate publisher of the New York Post.
DISCUSSION
In 1964, the United States Supreme Court created a qualified constitutional privilege for public officials. In New York Times Co. v Sullivan (376 US 254) the Court held that a public official was prevented by the First Amendment from recovering damages for a defamatory falsehood unless that person could show, by clear and convincing proof, that the statement complained of was published with "actual malice”, which the *539 Supreme Court defined as knowledge of falsity or reckless disregard for the truth. (Supra, at 280.)
"Actual malice” has been construed by a number of courts to mean that the defendant must have " 'entertained serious doubts as to the truth of [the] publication’ * * * [or] had a 'high degree of awareness of * * * probable falsity.’ ” (Harte-Hanks Communications v Connaughton, 491 US 657, 688 [1989]; New York Times Co. v Sullivan, 376 US, at 279-280, supra.) This qualified constitutional privilege is intended to preserve the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials”. (New York Times Co. v Sullivan, 376 US, at 270, supra [citations omitted]; see also, Garrison v Louisiana, 379 US 64, 74 [1964] ["a public official might be allowed the civil remedy only if he establishes that the utterance was false and that it was made with knowledge of its falsity or in reckless disregard of whether it was false or true”].)
In 1967, the Supreme Court extended a constitutional privilege to those libel cases in which the plaintiff was found to be a "public figure”* (Curtis Publ. Co. v Butts, 388 US 130, reh denied 389 US 889 [1967]). In Gertz v R. Welch, Inc. (418 US 323, 344-345 [1975]), the United States Supreme Court defined the term "public figure” by outlining two classes of persons who are to be considered "public figures” for purposes of defamation law. One class of persons consists of those who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes”. That category generally consists of people who have achieved enough prominence in society that their names are tantamount to household words; also included in this category are political figures who, merely by the nature of their occupations, invite comment upon a wide-ranging spectrum of issues. (Supra; James v Gannett Co., 40 NY2d 415, 423 [1976].) The other, much more common, class of public figures consists of those persons who have taken affirmative steps to attract public attention or who have thrust themselves into the forefront of a particular controversy in an attempt to influence the outcome of a situation (Gertz v R. Welch, Inc., 418 US, at 345, supra; James v Gannett Co., 40 NY2d, at 423, supra).
*540 As the allegations in the complaint bear out, Farrakhan is a "public figure” for the purposes of this lawsuit by virtue of his very public and prominent position in public affairs in general.
The NOI is also a "public figure” for purposes of this litigation. Plaintiffs concede that the NOI is a prominent organization which seeks public attention. (See, Contemporary Mission v New York Times Co., 842 F2d 612, 620-621 [2d Cir], cert denied 488 US 981 [1988] [under New York law, religious organization was at least limited purpose public figure where individual members sought media attention and publicity]; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979] [organization dedicated to animal rights was a public figure].)
Since the Court finds that plaintiffs are public figures, in order to defeat the motion for summary judgment, they must demonstrate with convincing clarity that the defendants acted with "knowing falsity” or "actual malice” in publishing the Article in question. (Bose Corp. v Consumers Union, 466 US 485, 511, n 30, reh denied 467 US 1267 [1984]; Freeman v Johnston, 192 AD2d 250, rearg denied, Iv granted 198 AD2d 924 [1st Dept 1993]; Mahoney v Adirondack Publ. Co., 71 NY2d 31, 39 [1987].)
Although the actual malice standard is not susceptible of a single definition, the United States Supreme Court has determined that in order to succeed in establishing such a claim a plaintiff must show either a deliberate falsification or reckless publication "despite the publisher’s awareness of probable falsity”. (Curtis Publ. Co. v Butts, 388 US 130, 153 [1967], supra; Garrison v Louisiana, 379 US 64, 74 [1964], supra.) The Supreme Court has further determined that: "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.” (St. Amant v Thompson, 390 US 727, 731; see also, Harte-Hanks Communications v Connaughton, 491 US, at 664, supra.) The "reckless disregard” standard requires a plaintiff to prove a subjective awareness of probable falsity. (Gertz v R. Welch, Inc., 418 US 323, 334, n 6, supra; St. Amant v Thompson, 390 US 727, 731 [1968], supra.)
It is also clear that a failure to investigate a story in and of itself does not establish that a defendant acted with constitutional malice (St. Amant v Thompson, 390 US, at 733, supra; Gertz v R. Welch, Inc., 418 US, at 332, supra) nor does "a showing of ill will or 'malice’ in the ordinary sense of the term”. *541 (Harte-Hanks Communications v Connaughton, 491 US, at 666, supra.)
The Supreme Court, in St. Amant (supra), provided examples of the kind of proof that would support a finding of constitutional malice: evidence that the story was (1) "fabricated”; (2) "so inherently improbable that only a reckless man would have put [it] in circulation”; or (3) "based wholly on an unverified anonymous telephone call” or some other source that the defendant had obvious reasons to doubt. (St. Amant v Thompson, 390 US, at 732, supra.)
In the case at bar, the primary focus of the Article was a report of statements made by Dr. Shabazz during an interview with Gabe Pressman. The plaintiffs concede that the statements made by Dr. Shabazz are not defamatory. Plaintiffs’ primary argument is that defendants acted with constitutional malice by purposely misinterpreting Dr. Shabazz’s statements in order to falsely suggest that Shabazz had charged Farrakhan with actually killing her husband. Plaintiffs claim that defendants were motivated to mischaracterize the interview by their hostility to Farrakhan.
Plaintiffs also argue that the cover headline — "Widow Of Malcolm X Fingers Farrakhan” — and the headline accompanying the article — "Widow Pins Malcolm X Murder On Farrakhan” are defamatory because they falsely attribute to Shabazz that she "formally charged” Farrakhan with "criminal” involvement in the murder of her husband. In making this argument plaintiffs rely on particular words used in the headlines and the Article, to wit: "finger”, "pins” and "complicity”. Plaintiffs assert that these words turned the Article into a "reckless charge of murder, indeed, a charge of conspiracy, plotting, planning and ultimately orchestrating the execution of an individual.” In Greenbelt Publ. Assn. v Bresler (398 US 6, 10-11 [1970]), the United States Supreme Court expressly rejected an attempt by the plaintiff to prove constitutional malice by relying on a combination of the allegedly defamatory words and defendant’s ill-will toward plaintiff.
The decision of the United States Supreme Court in Time, Inc. v Pape (401 US 279 [1971]) is also on point. In Pape, plaintiff, a police officer, asserted a libel claim against Time magazine based on an article which summarized a report issued by the United States Commission of Civil Rights. (401 US, at 280-281.) The article in that case reported on an episode of police brutality, referred to in the Commission’s report, which was allegedly committed by plaintiff. (Supra, at 281-282.) In *542 reporting on that incident, however, the article failed to make clear that the Commission’s reference to that incident was not based on a finding by the Commission, but rather, was based on the unproven allegations of the victim. (Supra.) In his libel claim, the plaintiff alleged that Time’s failure to refer to the episode as "allegations” constituted evidence of constitutional malice because the Commission’s report specifically stated that it had made no determination with respect to any of the charges contained in the report. (Supra, at 287-288.)
The Court rejected plaintiffs claim and directed a verdict for Time, finding that while Time may have misinterpreted the meaning of the Commission’s report, there was not, as a matter of law, evidence of constitutional malice. The Court stated: "Time’s omission of the word 'alleged’ amounted to the adoption of one of a number of possible rational interpretations of a document that bristled with ambiguities. The deliberate choice of such an interpretation, though arguably reflecting a misconception, was not enough to create a jury issue of 'malice’ under New York Times.” (401 US, at 290, supra.) In this case, even if defendants misinterpreted Shabazz’s statement, such misinterpretation does not arise to a level of constitutional malice. (See also, Suozzi v Parente, 202 AD2d 94, 102 [1st Dept 1994] [actual malice cannot be founded on the "misinterpretation of a source or the resolution of an ambiguity adversely to the plaintiff’]; Freeman v Johnston, 192 AD2d 250, 252 [1st Dept 1993], supra, affd 84 NY2d 52, cert denied — US —, 115 S Ct 576 [1994] [author’s "possibly mistaken inference” of source’s statement is not evidence of constitutional malice]; Mahoney v Adirondack Publ. Co., 71 NY2d 31 [defendant did not act with constitutional malice even though he based his allegedly defamatory statements solely on what he thought he had heard 30 feet from the alleged incident].)
Plaintiffs assert that defendants’ failure to investigate other accounts of the assassination constitutes evidence of constitutional malice. However, the courts have found that failure to investigate a story does not establish that a defendant acted with constitutional malice. (St. Amant v Thompson, 390 US, at 733, supra; Gertz v R. Welch, Inc., 418 US 323, 332 [1974], supra [mere proof of failure to investigate cannot establish constitutional malice]; Sweeney v Prisoner’s Legal Servs., 84 NY2d 786, 792 [1995] [without direct evidence of defendants’ awareness of falsity of published statements, failure to investigate does not support finding of constitutional malice]; see also, Freeman v Johnston, 84 NY2d 52, supra [fact that one source disagreed *543 with another source’s characterization of plaintiffs address to a corporate board did not put author on notice that her original source was in error]; Sands v News Am. Publ., NYLJ, Jan. 17, 1995, at 27, col 4 [Sup Ct, NY County] [the fact that a law enforcement agency issued a report stating that it could not prove allegation that plaintiff was associated with organized crime did not constitute evidence that author acted with constitutional malice in reporting on such association].)
Furthermore, defendants were under no legal obligation to report on every aspect of the assassination, or to describe the involvement of every person believed to have played a role. (See, New York Times Co. v Connor, 365 F2d 567, 576 [5th Cir 1966] [author entitled to present only one side of a story without fear or libel prosecution]; Davis v Costa-Gravas, 580 F Supp 1082 [SD NY 1984] [reporter may rely on statements by a single source even though they reflect only one side of the story]; Westmoreland v CBS, Inc., 601 F Supp 66 [SD NY 1984] [publisher is under no obligation to treat the subject of his accusations fairly or evenhandedly]; Reliance Ins. Co. v Barron’s, 442 F Supp 1341 [SD NY 1977] [plaintiffs claim that publisher omitted important parts of story not evidence of constitutional malice].)
In addition, the fact that defendants failed to interview Dr. Shabazz prior to publishing the Article is also not evidence of constitutional malice. A publisher is only required to conduct an additional investigation if it entertains serious doubts about the truth of its story. (St. Amant v Thompson, 390 US, at 731, supra; Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, cert denied 434 US 969 [1977]; see, Ortiz v Valdescastilla, 102 AD2d 513 [1st Dept 1984].)
Plaintiffs’ submission of a statement allegedly made by Shabazz after the publication of the Article is also not dispositive on the issue of constitutional malice. (See, Sands v News Am. Publ. Corp., supra [report of law enforcement agency allegedly contradicting article cannot be evidence of defendants’ state of mind since it was created after publication of subject article]; see also, Herbert v Lando, 781 F2d 298, 305 [2d Cir], cert denied 476 US 1182 [1986] ["It is self-evident that information acquired after the publication of defamatory material cannot be relevant to the publisher’s state of mind or his alleged malice at the time of publication”].)
Plaintiffs claim that defendants’ dislike of Farrakhan and the NOI is also evidence of constitutional malice. Even if there is evidence that a libel defendant harbors ill-will against a *544 plaintiff, such evidence does not constitute proof that the defendant has acted with constitutional malice (i.e., knowing falsity or reckless disregard for the truth). (Harte-Hanks Communications v Connaughton, 491 US, at 657, 666 [1989], supra [a "showing of ill will or 'malice’ in the ordinary sense of the term” does not establish that the defendants acted with constitutional malice]; Greenbelt Publ. Assn. v Bresler, 398 US, at 10, supra [United States Supreme Court held it to be error of "constitutional magnitude” for lower court Judge to instruct the jury that constitutional malice included " 'spite, hostility or deliberate intention to harm’ ”]; Hotchner v Castillo-Puche, 551 F2d 910, 914 [2d Cir], cert denied 434 US 834 [1977] ["Knowledge of an author’s ill-will does not by itself prove knowledge of probable falsity”]; World Boxing Council v Cosell, 715 F Supp 1259, 1266 [SD NY 1989] [a fact finder may not find constitutional malice " 'on the basis of defendant’s hatred, spite, ill will, or desire to injure’ (defendants)”]; Roche v Hearst Corp., 53 NY2d 767, 769 [1981] [holding that constitutional malice could not " 'be equated with a base or unworthy motive’ ”].)
Plaintiffs’ counsel’s bald assertion that the published sources relied upon by Newfield are "dubious, historically uncredible, revisionist works,” is also insufficient evidence of constitutional malice. Plaintiffs have failed to set forth evidence that New-field had any reason to doubt the information he received from Charles 37X Kenyatta about Farrakhan’s role in planning the assassination. (See, Hotchner v Castillo-Puche, 551 F2d, at 914, supra ["Where a passage is incapable of independent verification, and where there are no convincing indicia of unreliability, publication of the passage cannot constitute reckless disregard for the truth”].)
Finally, there is no basis for plaintiffs’ claim that defendants acted with constitutional malice by referring in the Article to a document from the FBI as "new” evidence. In linking the document to Farrakhan, Newfield relied on published books by Baba Zak A. Kondo and Karl Evanzz.
Newfield’s reference to the document as "new” is also not evidence of constitutional malice since there is no evidence that Newfield was previously aware of the document. Moreover, plaintiffs have not set forth any evidence that the document does not refer to Farrakhan, or that it was not a new piece of evidence.
Based on the foregoing, plaintiffs have failed to set forth with "convincing” clarity that defendants acted with constitu *545 tional malice in publishing the disputed words. (Bose Corp. v Consumers Union, 466 US 485, 511, n 30, reh denied 467 US 1267 [1984], supra; Freeman v Johnston, 84 NY2d 52, supra.) The record before this court indicates that it was constitutionally sufficient for Newfield to have relied on the statements made by Shabazz, his previously published article in the March 1, 1994 issue of the Post, three recently published books on the assassination, the Hayer affidavit, his interview with Charles 37X Kenyatta, the film Brother Minister and the statements made by Farrakhan himself. Based on those sources, plaintiffs have failed to raise any factual basis for the assertion that Newfield published the Article knowing it to be false or with reckless disregard for its truth.
Finally, while plaintiffs contend that they are entitled to discovery before this matter may be disposed of on the merits, they have failed to indicate what discovery is required. Moreover, the issues raised in this motion are all matters of law which can be determined by the court on the papers, without need for any discovery. (See, Holy Spirit Assn. v Harper & Row Publs., 101 Misc 2d 30, 35 [Sup Ct, NY County 1979] ["(m)ere surmise, suspicion and accusation are insufficient to defeat summary judgment * * * as is the mere hope of questioning the credibility of defendants”]; see also, Zetes v Richman, 86 AD2d 746 [4th Dept 1982] [dismissal of defamation complaint on the pleadings affirmed without discovery where plaintiff failed to raise an issue as to publisher’s gross irresponsibility in publishing complained of statements]; Trails W. v Wolff, 32 NY2d 207 [1973] [plaintiffs not entitled to additional discovery where they failed to raise an issue of knowing or reckless falsity in opposition to defendants’ motion for summary judgment].)
Based on the record before this court, plaintiffs have failed to establish any evidence of actual malice or any facts from which it could be concluded that the defendants acted with a reckless disregard of the truth. On that basis, defendants’ motion for summary judgment must be granted.
The complaint is dismissed in its entirety.

 It is the role of the court to determine whether the evidence shows a libel plaintiff to be a public figure. (Rosenblatt v Baer, 383 US 75 [1966].)