[No. B168077. Second Dist., Div. Seven. Nov. 8, 2004.]

PATRICK J. GALLAGHER, Plaintiff and Respondent, v.
ANN CONNELL, Defendant and Appellant.

## Counsel

Hanger, Levine & Steinberg and John A. Demarest for Defendant and Appellant.

Saavedra & Zufelt, Cruz Saavedra and Roger C. Glienke for Plaintiff and Respondent.

## OPINION

**JOHNSON, Acting P. J.**—We are presented with a variation on the age-old riddle of the tree that falls in the forest when there is no one around to hear it.[1] It is well settled that in opposing a SLAPP motion the plaintiff must show a probability of prevailing on his cause of action and the showing must be based on admissible evidence.[2] This appeal poses the question: "If the plaintiff submits *in*admissible evidence but no one objects to it is the evidence 'admissible' for purposes of showing a probability of success on the merits?" In light of the deep-rooted principle that evidentiary objections are waived if not properly made and the policy and procedures underlying California's anti-SLAPP statute we conclude the evidence can be considered in determining whether the plaintiff met his burden of proof. For this and other reasons discussed below we affirm the trial court's order denying the defendant's SLAPP motion.

### FACTS AND PROCEEDINGS BELOW

This case arises from a controversy over who should be the beneficiary of the trust of Anne Petone, a 92-year-old widow with a million-dollar estate.

In 1992 Petone placed most of her assets in a living trust. Several individuals and charities were named as beneficiaries. Petone named Ann Connell, a neighbor, as the beneficiary of a certificate of deposit in the amount of $125,000. Several years later Petone asked her pastor, Father Patrick Gallagher, a Roman Catholic priest, to assist her with her financial affairs. Gallagher did so. His evidence shows he collected Petone's rental income and placed it in her bank account and hired a professional management company to manage her rental property. In addition Gallagher frequently visited Petone to make sure her personal needs were being met. He made sure she had enough to eat, caused necessary repairs to be made on her home and, when he went on vacations, he arranged for his sister, a nun, to stay with Petone and look after her.

After Gallagher had been assisting Petone with her personal and business affairs for approximately a year and a half, Petone made a significant change in her trust, bequeathing the bulk of her estate to Gallagher and naming him the successor trustee of her trust. Connell ceased to be a beneficiary of the trust.

---

[1] For centuries philosophers have puzzled over the question, "If a tree falls in the forest and there's no one around to hear it does it still make a sound?"

[2] *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1147 [12 Cal.Rptr.3d 493]; (hereafter *Fashion 21*).

In 2001 two individuals, Jean Wren and Jean Wren, Jr., filed petitions on behalf of Petone seeking among other things to have the court appoint them conservators of Petone's person and estate, to remove Gallagher as successor trustee of the Petone trust and to have the amended trust declared invalid. (How the Wrens became involved in Petone's affairs is not clear from the record but is not relevant to the issues before us.) The Wrens' petitions alleged Petone's friends and neighbors were concerned for her well being. As examples of the bases for this concern the petitions alleged Gallagher had "isolated" Petone, failed to provide her sufficient money for food and other routine needs and had not used the assets of her trust for her maintenance and support.

Connell and several other neighbors attended the first hearing on the Wrens' petitions. The next day the Daily Breeze newspaper published an article about the controversy over Petone's conservatorship. The article quoted Connell as stating, with reference to Gallagher, " 'We thought he was there to help her, but he was there to help himself.' "

Gallagher sued Connell for slander, libel and other torts.[3] Connell moved to strike the complaint under the anti-SLAPP statute.[4] The trial court denied the motion and Connell filed a timely appeal.[5]

## DISCUSSION

The parties agree for purposes of the SLAPP motion Connell's alleged statement arose from constitutionally protected activity. Thus the only issue is whether the trial court was correct in concluding Gallagher established a reasonable probability of success on the merits of his slander claim.[6] "To establish such a probability, a plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."[7] Our review of this issue is de novo.[8]

Connell contends Gallagher failed to demonstrate a reasonable probability of success on the merits because he did not make a sufficient showing: (1)

---

[3] After the trial court denied Connell's SLAPP motion Gallagher voluntarily dismissed all his causes of action except for slander.

[4] Code of Civil Procedure section 425.16.

[5] Code of Civil Procedure section 425.16, subdivision (j).

[6] Code of Civil Procedure section 425.16, subdivision (b)(1); *Fashion 21, supra,* 117 Cal.App.4th at page 1145.

[7] *Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548 [46 Cal.Rptr.2d 880].

[8] *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929 [116 Cal.Rptr.2d 187].

Connell made the statement attributed to her; (2) the statement was one of fact as opposed to opinion; (3) Connell made the statement with malice; and (4) the statement is false. We address each of these contentions below.[9]

I. *CONNELL DID NOT RAISE A HEARSAY OBJECTION TO THE EVIDENCE SHE MADE THE ALLEGEDLY DEFAMATORY STATEMENT. THEREFORE THE TRIAL COURT COULD PROPERLY CONSIDER SUCH EVIDENCE IN DETERMINING GALLAGHER'S PROBABILITY OF SUCCESS ON THE MERITS.*

■ The plaintiff's first task in a slander suit is to show the defendant made the allegedly defamatory statement. The only evidence Gallagher presented on this issue was a copy of the Daily Breeze article containing the allegedly defamatory statement and attributing the statement to Connell.

When offered in this context the newspaper article is hearsay because it is an out-of-court statement by the reporter offered to prove Connell made the remark attributed to her in the article. No exception to the hearsay rule is applicable to this statement. Therefore, the statement is not "admissible" evidence.[10] Connell, however, did not object to the article on the ground it is hearsay. She objected on the grounds the article was "no[t] admissible" and "lack[s] authentication."[11] In her brief on appeal she argues the article was not "competent admissible evidence."

Thus we are faced with this question: Does the plaintiff meet the requirement of showing a probability of success on the merits if he bases his probability of success on evidence which is inadmissible but not properly objected to?

We explored the anti-SLAPP statute's admissible-evidence requirement in detail in *Fashion 21*. There we explained:

"It is well settled that in opposing a SLAPP motion the plaintiff's showing of a probability of prevailing on its claim must be based on admissible evidence. In *Wilcox v. Superior Court* we held the requirement of establishing a probability of success means 'the plaintiff must demonstrate the complaint

---

[9] Connell does not contend the litigation privilege of Civil Code section 47, subdivision (b) applies to her.

[10] Evidence Code section 351 states: "Except as otherwise provided by statute, all relevant evidence is admissible." Evidence Code section 1200, subdivision (b) provides: "Except as provided by law, hearsay evidence is inadmissible."

[11] Lack of proper authentication at the SLAPP motion stage is not fatal to the plaintiff's showing of success on the merits for the reasons we explained in *Fashion 21, supra*, 117 Cal.App.4th at pages 1146–1147.

is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citation.] We went on to explain this test implicitly assumes the evidence on behalf of the plaintiff is admissible, 'otherwise there would be nothing for the trier of fact to credit.' [Citation.] In *Roberts v. Los Angeles County Bar Assn.* we held in order to demonstrate a probability of success a plaintiff 'must adduce competent admissible evidence.' [Citation.] Our Supreme Court has not spoken directly on this issue. However, in construing a statute which it described as 'closely related' to the SLAPP statute, the court held a plaintiff seeking punitive damages against certain health care providers must 'demonstrate that he possesses a legally sufficient claim which is "substantiated," that is, supported by competent, admissible evidence.' [Citation.]"[12]

We went on to distinguish evidence which is substantively inadmissible from evidence which is only inadmissible because it fails to meet some collateral requirement for admissibility such as authentication. We observed:

"[T]he proper view of 'admissible evidence' for purposes of the SLAPP statute is evidence which, by its nature, is capable of being admitted at trial, i.e., evidence which is competent, relevant and not barred by a substantive rule. Courts have thus excluded evidence which would be barred at trial by the hearsay rule, [citation] or because it is speculative, not based on personal knowledge or consists of impermissible opinion testimony. [Citation.] This type of evidence cannot be used by the plaintiff to establish a probability of success on the merits because it could never be introduced at trial. On a SLAPP motion '[a]n assessment of the probability of prevailing on the claim looks to *trial*, and the evidence that will be presented at that time.' [Citation.]"[13]

At first it would appear that under our decisions in *Fashion 21* and *Wilcox v. Superior Court*, we should hold Gallagher failed to establish a probability of success on the merits of his slander cause of action. His probability of success depends at least in part on evidence which suffers from an incurable substantive defect—violation of the hearsay rule—and therefore "could never be introduced at trial."[14] Furthermore, in *Wilcox* we rejected the argument the plaintiff can satisfy its burden of proof merely by demonstrating

---

[12] *Fashion 21, supra,* 117 Cal.App.4th at page 1147; see *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809 [33 Cal.Rptr.2d 446] and *Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604 [129 Cal.Rptr.2d 546].

[13] *Fashion 21, supra,* 117 Cal.App.4th at page 1147.

[14] *Fashion 21, supra,* 117 Cal.App.4th at page 1147.

the existence of sufficient evidence to establish a prima facie case and need not actually produce such evidence at the hearing on the motion.[15]

But the present case is different from *Fashion 21, Wilcox* and other cases which have held the plaintiff could not establish a probability of success by relying on inadmissible evidence. In those cases, the defendants lodged proper objections to the inadmissible evidence.[16] In the present case, the defendant did not. Evidence Code section 353 provides the admission of inadmissible evidence is harmless error "unless . . . [t]here appears of record an objection to or a motion . . . to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion[.]"

It has long been the rule an objection the evidence is "not admissible" or "not competent" is too general to include the objection it calls for hearsay.[17] Therefore, in the case before us the hearsay objection was waived in the trial court and on appeal. Under another long-standing rule, "incompetent hearsay admitted *without objection* is sufficient to sustain a finding or judgment."[18] The reporter's attribution of the allegedly defamatory statement to Connell was admitted without objection. It is direct evidence Connell made the statement and thus it is sufficient to sustain a finding of a reasonable probability Gallagher can satisfy the first element of his slander cause of action.

We recognize an argument could be made a court, in ruling on a SLAPP motion, should determine the admissibility of the plaintiff's proffered evidence if the defendant at least raises the issue of admissibility even if he or she has not composed a technically sufficient objection. Allowing the plaintiff to defeat a SLAPP motion with evidence which supports the plaintiff's cause of action but which would be inadmissible at trial defeats the purpose of the anti-SLAPP statute to provide "a fast and inexpensive unmasking and dismissal" of meritless lawsuits.[19] In the present case for example it is highly

---

[15] *Wilcox v. Superior Court, supra,* 27 Cal.App.4th at page 830.

[16] *Fashion 21, supra,* 117 Cal.App.4th at pages 1145–1146; *Wilcox v. Superior Court, supra,* 27 Cal.App.4th at page 830.

[17] *People v. Horn* (1960) 187 Cal.App.2d 68, 77 [9 Cal.Rptr. 578] and authorities cited therein.

[18] *Rupf v. Yan* (2000) 85 Cal.App.4th 411, 430–431 [102 Cal.Rptr.2d 157], citation omitted; other cases stating this rule include *Mosesian v. Pennwalt Corp.* (1987) 191 Cal.App.3d 851, 865 [236 Cal.Rptr. 778]; *Frudden Enterprises, Inc. v. Agricultural Labor Relations Bd.* (1984) 153 Cal.App.3d 262, 269 [201 Cal.Rptr. 371].

[19] *Wilcox v. Superior Court, supra,* 27 Cal.App.4th at page 823.

unlikely Connell's counsel, after reading this opinion, would miss another opportunity to object to the newspaper article on the ground of hearsay. Until that opportunity arises, however, this lawsuit will continue to hang over Connell's head and she will continue to incur legal fees and costs in defending against it.

We do not find this argument persuasive. We do not quarrel with the proposition the Legislature intended " 'to prevent SLAPPs by ending them early and without great cost to the SLAPP target.' "[20] But the Legislature also intended "to avoid jeopardizing meritorious lawsuits."[21] Requiring the defendant to clearly state the specific ground of her objection to the plaintiff's evidence maintains this balance between the interests of the defendant and the plaintiff. If Connell had objected to the newspaper article as hearsay when offered to prove she made the statement attributed to her, Gallagher would have had the opportunity to cure the defect in his evidence. He could have obtained a declaration from the reporter or another witness testifying Connell made the statement. Alternatively he could have asked the trial court to continue the hearing on the motion and lift the stay on discovery so he could take the reporter's deposition.[22] If Gallagher cured the defect with nonobjectionable evidence the trial court could proceed to determine other issues raised in the motion. If, however, Gallagher did not cure the defect after having been given the opportunity to do so, the trial court could properly grant the defendant's motion and strike the complaint. We also observe it is entirely possible if not probable Gallagher will introduce the reporter's testimony at trial, or at least other evidence proving Connell indeed did make these statements during her interview for the newspaper article. In other words, this is *not* the sort of evidentiary problem a plaintiff will be incapable of curing by the time of trial.

■ For these reasons we conclude the trial court properly considered the newspaper article as evidence Connell made the allegedly defamatory statement and this evidence established a reasonable probability Gallagher could satisfy his burden of proving Connell made the statement.

---

[20] *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 65 [124 Cal.Rptr.2d 507, 52 P.3d 685], citation omitted.

[21] *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at page 66.

[22] As we have noted, "the fact evidence necessary to establish the plaintiff's prima facie case is in the hands of . . . a third party goes a long way toward showing good cause for discovery." (*The Garment Workers Center v. Superior Court* (2004) 117 Cal.App.4th 1156, 1162 [12 Cal.Rptr.3d 506].)

## II. UNDER THE CIRCUMSTANCES OF THIS CASE A REASONABLE TRIER OF FACT COULD FIND THE STATEMENT "HE CAME TO HELP HIMSELF" TO BE DEFAMATORY.

Connell argues even if Gallagher could show she made the statement attributed to her in the article that statement was not defamatory as a matter of law. Rather, the statement was an expression of opinion or hyperbole uttered in the heat of the court proceedings involving Gallagher and her friend and neighbor, Petone. We reject this argument and conclude a reasonable trier of fact could find the statement defamatory.[23]

■ A reasonable person reading the statement at issue in the context of the entire article would conclude the speaker is stating Gallagher pretended he was interested in helping Petone but his real interest was in getting his hands on her money.[24] If this is a false statement of fact it is slander. Clearly the statement would injure Gallagher in respect to his occupation as a priest because it reflects adversely on his moral behavior, his trustworthiness and his commitment to the welfare of the members of his flock.[25]

■ The essential difference between a statement of fact and a statement of opinion is that a statement of fact implies a provably false factual assertion while a statement of opinion does not.[26] For ex ample, the Daily Breeze article quotes the petition for conservatorship as stating Gallagher is " 'extremely rude' " when Petone's friends come to visit. This statement is not defamatory because it does not make a factual assertion capable of being proven true or false. Whether someone is "extremely rude" is a subjective judgment of the person making the statement.[27] In contrast it has been held a statement the members of a priestly society, " 'placed the property belonging

[23] When the court concludes a statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury. (*Campanelli v. Regents of University of California* (1996) 44 Cal.App.4th 572, 578 [51 Cal.Rptr.2d 891].)

[24] Gallagher admitted he does not belong to an order which requires a vow of poverty and there is nothing in church policy which would prevent him from accepting the "gift" of Petone's estate.

[25] Under Civil Code section 46, subdivision 3, a statement is slander if it tends directly "to injure [the plaintiff] in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits[.]"

[26] *Moyer v. Amador Valley Union High School Dist.* (1990) 225 Cal.App.3d 720, 724 [275 Cal.Rptr. 494].

[27] Compare *Moyer v. Amador Valley Joint Union High School Dist.*, *supra*, 225 Cal.App.3d at page 725 (statement Moyer "is the worst teacher" at the school not actionable); *Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1609 [284 Cal.Rptr. 244] (statement Kahn was "hostile" to children not actionable).

to . . . the Society in their own names' " "might well be construed as an assertion of fact, rather than opinion, and . . . is susceptible of a libelous reading."[28] The court reached this conclusion despite acknowledging the statement was made "in the context of a highly charged and opinion-riddled theological debate[.]"[29]

In the case before us, the assertion Gallagher was not "there to help [Petone] but he was there to help himself," implying deceit, chicanery, fraud and undue influence on Gallagher's part, is capable of being proven true or false. Relevant evidence could include the increase or decrease in Petone's care and maintenance after Gallagher became involved in her life; the improvement or deterioration in Petone's financial affairs; whether Gallagher was aware Petone intended to make him the sole beneficiary of her trust; the extent to which Gallagher actively participated in bringing about the changes in the trust benefiting him; Petone's mental and physical condition at the time she made the changes; and whether Petone's past involvement with the church was such that the church or one of its priests would be a "normal object of [Petone's] bounty."[30]

We thus conclude it is reasonably probable a trier of fact would find the statement at issue a defamatory statement of fact.

## III. *GALLAGHER WAS NOT A PUBLIC FIGURE AND THEREFORE DOES NOT HAVE TO SHOW CONNELL ACTED WITH MALICE IN MAKING THE STATEMENT AT ISSUE.*

We reject Connell's claim Gallagher was a public figure and therefore had to establish he could prove she made the statement at issue with actual malice.[31]

Gallagher's declaration states he is a priest and the pastor of Mary Star of the Sea parish in San Pedro. Mary Star is one of three Catholic parishes in the San Pedro community. When Gallagher first came to Mary Star approximately 20 years ago the local newspaper ran "a small human interest article" about him. He states he may have been mentioned in a newspaper story about a pregnant student "a few years ago." Other than that, Gallagher declared, he

---

[28] *Kelly v. Schmidberger* (2d Cir. 1986) 806 F.2d 44, 46, 49, italics omitted.

[29] *Kelly v. Schmidberger, supra*, 806 F.2d at page 49.

[30] See *People v. Miller* (2000) 81 Cal.App.4th 1427, 1447 [97 Cal.Rptr.2d 684].

[31] See *New York Times Co. v. Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710].

has not been the subject of media attention until the Daily Breeze article which is the subject of this lawsuit. He also states he has not been involved in local politics or civic affairs.

■ Whether the plaintiff in a defamation action is a public figure is a question of law.[32] Based on the evidence in the record before us we conclude Gallagher was not a public figure at the time of the Daily Breeze article either for all purposes or for a limited purpose.

■ Public figures come in two forms: the all-purpose public figure—one who has achieved such pervasive fame or notoriety as to become a public figure for all purposes and in all contexts—and the limited-purpose public figure—one who injects herself or is drawn by others into a particular public controversy and thereby becomes a public figure as to her role in that controversy.[33]

There are two rationales for treating public figures differently from private persons. First, "public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy."[34] Second, public figures for the most part are persons who have assumed prominent roles in society. "Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved."[35] In either case, the courts have reasoned public figures have invited the attention and comment they receive and must accept certain necessary consequences of their choice, including the risk false and injurious statements will be made about them.[36]

The Supreme Court, in *Gertz*, suggested there may be a third type of public figure—the involuntary public figure—although it noted "the instances of truly involuntary public figures must be exceedingly rare."[37]

---

[32] *Khawar v. Globe Internat., Inc.* (1998) 19 Cal.4th 254, 264 [79 Cal.Rptr.2d 178, 965 P.2d 696].

[33] *Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 344–345 [41 L.Ed.2d 789, 94 S.Ct. 2997] (*Gertz*); *Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 254–255 [208 Cal.Rptr. 137].

[34] *Gertz, supra,* 418 U.S. at page 344.

[35] *Gertz, supra,* 418 U.S. at page 345.

[36] See *Gertz, supra,* 418 U.S. at pages 342, 344–345.

[37] *Gertz, supra,* 418 U.S. at page 345.

■ We have found no case which has held simply being a member of the clergy makes one an all-purpose public figure for purposes of a defamation action. We hold it does not. Clearly Gallagher is no Jerry Falwell, Jesse Jackson, or Louis Farrakhan.[38] Nor is there any evidence Gallagher was particularly well known in his community because of his religious, civic, or political activities.[39] Although the evidence shows Gallagher has had a long career in the priesthood there is no evidence he has ever sought or received notoriety or public attention by reason of his position or achievements. There is, for example, no evidence Gallagher has appeared on television news or talk shows, testified before Congress, given widely reported speeches or done anything else to make himself newsworthy. In 2002 there were approximately 30,000 diocesan priests such as Gallagher in the United States.[40] Nothing in the record causes Gallagher to stand out from the other 29,999.

■ Nor can Gallagher be characterized as a limited-purpose public figure. Limited-purpose public figures are those who have thrust themselves before the public in order to influence the resolution of a particular public controversy.[41] This characterization does not apply to Gallagher because he did not thrust himself into a public controversy over who should be the successor trustee and beneficiary under Petone's trust. There was no public controversy until the Daily Breeze published its article.[42]

Finally, Gallagher is not a member of the "exceedingly rare" breed of involuntary public figures.[43] Members of this breed are identified by their assumption of "roles of special prominence in the affairs of society."[44] There is no evidence Gallagher has achieved such prominence. It would be more accurate to say Gallagher was dragged unwillingly into the controversy over Petone's estate when the Wrens filed their petitions for conservatorship and to remove Gallagher as trustee.[45] Even then Gallagher did no more than what

---

[38] See *Hustler Magazine v. Falwell* (1988) 485 U.S. 46, 57, fn. 5 [99 L.Ed.2d 41, 108 S.Ct. 876]; *Jackson v. MPI Home Video* (N.D.Ill. 1988) 694 F.Supp. 483, 492; *Farrakhan v. N.Y.P. Holdings, Inc.* (1995) 168 Misc.2d 536 [638 N.Y.S.2d 1002, 1006].

[39] Compare *Gertz, supra*, 418 U.S. at pages 351–352, holding Chicago attorney was not a public figure even though he had been active in civil and professional affairs.

[40] http://www.jobtitles.net/occupations/employment/063.html [as of Nov.8, 2004].

[41] *Gertz, supra*, 418 U.S. at page 345.

[42] Compare *Annette F. v. Sharon S.* (2004) 119 Cal.App.4th 1146, 1164–1166 [15 Cal.Rptr.3d 100] (plaintiff was a limited public figure with respect to issues involving legal rights of gay and lesbian parents).

[43] See *Gertz, supra*, 418 U.S. at page 345.

[44] *Gertz, supra*, 418 U.S. at page 345.

[45] Compare *Wolston v. Reader's Digest Assn., Inc.* (1979) 443 U.S. 157, 166 [61 L.Ed.2d 450].

was necessary to defend himself against the Wrens' accusations in court. So far as the record before us shows, Gallagher never discussed this matter with the press until approached by the Daily Breeze reporter for a reaction to the statement allegedly made by Connell. In *Khawar v. Globe Internat., Inc.*, our Supreme Court held the characterization as an involuntary public figure must be reserved for an individual "who, despite never having *voluntarily* engaged the public's attention in an attempt to influence the outcome of a public controversy, nonetheless has acquired such prominence in relation to the controversy as to permit media access sufficient to effectively counter media-published defamatory statements."[46] We do not believe Gallagher became a public figure merely because he responded to a statement which, if left uncontradicted, could later be found to be an adoptive admission.[47] As was the case in *Khawar* the plaintiff made this statement to the press only "*after and in response to*" the publication of the defamatory statement.[48] To hold otherwise would allow the person making the defamatory statement to create her own defense by turning the victim into a public figure.[49]

For the reasons explained above, Gallagher is not required to prove actual malice on Connell's part in order to recover for defamation.

## IV. BECAUSE THE STATEMENT INVOLVES A MATTER OF PUBLIC INTEREST GALLAGHER WAS REQUIRED TO SHOW A REASONABLE PROBABILITY OF PROVING THE STATEMENT FALSE. GALLAGHER MET THAT BURDEN.

### A. The Statement Involves a Matter of Public Interest.

If the defamatory statement pertains to a matter of public interest involving a private-figure plaintiff that plaintiff, in defending against a SLAPP motion, must show a reasonable probability of proving the statement was false.[50] Connell contends the issue of whether a priest in the community abused his office to take advantage of an elderly parishioner suffering from dementia is of significant public interest. She further maintains Gallagher failed to show a reasonable probability he could prove false the statement he abused his trust. Again, we decide this issue as a matter of law.[51]

---

[46] *Khawar v. Globe Internat., Inc., supra,* 19 Cal.4th at page 265.

[47] Evidence Code section 1221; *In re Amos L.* (1981) 124 Cal.App.3d 1031, 1037 [177 Cal.Rptr. 783].

[48] *Khawar v. Globe Internat., Inc., supra,* 19 Cal.4th at page 266.

[49] See *Khawar v. Globe Internat., Inc., supra,* 19 Cal.4th at page 266.

[50] *Fashion 21, supra,* 117 Cal.App.4th at page 1150. Contrary to Gallagher's claim on appeal, Connell did raise the "public interest" issue in the trial court.

[51] *Nizam-Aldine v. City of Oakland* (1996) 47 Cal.App.4th 364, 375 [54 Cal.Rptr.2d 781].

A review of the case law since *Philadelphia Newspapers, Inc. v. Hepps*[52] reveals no precise boundaries defining an issue of public importance. Suppose for example, a newspaper prints an article stating a man bit his dog. Must the man prove the statement was false on the grounds the very novelty of the story makes it a matter of public interest or because animal cruelty is a matter of public concern? Or must the newspaper prove the statement was true on the ground the conduct between a man and his dog is a private matter between the two of them? There appears to be no clear answer.

It does appear, however, for a matter to be of public interest in the defamation context it must be of concern to a large segment of the populace as opposed to a small fragment having a special interest.[53] Furthermore, in a close case such as this we believe it is better to err on the side of free speech.[54]

 We conclude the issue of whether Gallagher, a parish priest, took unfair advantage of Petone, an elderly parishioner who reportedly suffered from dementia, is a matter of concern not only to Petone's friends but to the more than 3,000 members of the Mary Star parish where Gallagher is in charge of parish finances. Moreover, whether or not the accusations against Gallagher are true, the story may cause elderly individuals to be more cautious about whom they allow to control their financial affairs; it may cause relatives and friends to more closely monitor the personal well-being of their elderly relatives and friends; it may lead religious organizations to develop standards for their employees' involvement in the financial affairs of their members; and it may lead to legislation to further protect the interests of the elderly and mentally impaired. Therefore we find the statement at issue in this case involves a matter of public interest.

## B. *Gallagher Showed a Reasonable Probability of Proving the Statement False.*

In *Wilcox v. Superior Court* we observed: "In order to satisfy due process, the burden placed on the plaintiff" to show a reasonable probability of

---

[52] *Philadelphia Newspapers, Inc. v. Hepps* (1986) 475 U.S. 767 [89 L.Ed.2d 783, 106 S.Ct. 1558] (holding private-figure plaintiff must prove falsity of statement involving matter of public interest in order to recover damages for defamation from a media defendant). California courts as well as other jurisdictions have applied this rule to nonmedia defendants. See *Nizam-Aldine v. City of Oakland, supra,* 47 Cal.App.4th at pages 373–374.

[53] Compare *Nizam-Aldine v. City of Oakland, supra,* 47 Cal.App.4th at page 376 (dispute had "potentially enormous impact on . . . local residents") and *Melaleuca, Inc. v. Clark* (1998) 66 Cal.App.4th 1344, 1363 [78 Cal.Rptr.2d 627] (statements plaintiff's product could cause serious illness "addressed matters of obvious widespread public interest") with *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132 [2 Cal.Rptr.3d 385] (plaintiff's accusation of theft against defendant of interest only to "a small group of other private parties").

[54] See *Hotchner v. Castillo-Puche* (2nd Cir. 1977) 551 F.2d 910, 913.

success on the merits "must be compatible with the early stage at which the motion is brought and heard . . . and the limited opportunity to conduct discovery . . . ."[55] Our Supreme Court has held only a "minimal" showing of merit is necessary in order for the plaintiff to proceed with his suit.[56] Gallagher satisfied his burden of showing the allegation he was not "there to help" Petone "but was there to help himself" was false.

Gallagher's declaration in opposition to the SLAPP motion describes the things he did for Petone to improve her personal life and her financial affairs. He also notes he had been helping Petone with her affairs for almost two years before she changed her trust to name him as the beneficiary. Petone created her trust before she knew Gallagher personally. When she decided to change the trust she went back to the attorney who had prepared the original trust.

Gallagher also submitted probate court orders on motions made with respect to Petone's estate. Among these orders the court approved Gallagher's trust accounting for the period December 1997 through September 2001—the period in which Gallagher is accused of mishandling Petone's personal needs and estate. The court found Gallagher had expended $6,500 of his own money on Petone's needs during that period and ordered he be reimbursed. In addition, in response to the Wrens' motion to determine the validity of Petone's trust the probate court found, among other things, that in executing the original trust and all subsequent amendments, "Ann Petone was competent, represented by the attorney of her choosing, understood the nature and character of her property and the natural objects of her bounty, and [acted] freely and without undue influence or fraud . . . ." The court found "no evidence of neglect[.]" In conclusion, the court stated: "I find by clear and convincing evidence Gallagher has established the beneficiary designations in his favor were not the product of fraud, menace, duress or undue influence and that he is not disqualified as a beneficiary[.]"

The evidence summarized above is sufficient to show Gallagher has a reasonable probability of success on his claim for defamation.

---

[55] *Wilcox v. Superior Court, supra,* 27 Cal.App.4th at page 823.
[56] *Navellier v. Sletten* (2002) 29 Cal.4th 82, 94 [124 Cal.Rptr.2d 530, 52 P.3d 703].

## DISPOSITION

The order denying the SLAPP motion is affirmed.

Woods, J., and Zelon, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 2, 2005.