Filed 8/28/24  Jordan v. Molina Healthcare CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| JAYSON JORDAN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MOLINA HEALTHCARE, INC. et al.,<br><br>    Defendants and Respondents. | B326384<br><br>(Los Angeles County Super. Ct. No. 21STCV00970) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert B. Broadbelt, Judge.  Affirmed.

Law Offices of Dilip Vithlani and Dilip M. Vithlani; The Law Office of Jonathan J. Moon and Jonathan J. Moon for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester, Al M. De La Cruz, Christine La Vorgna and Mark R. Wilson, for Defendants and Respondents.

———————————

The trial court granted summary judgment to defendants Molina Healthcare, Inc. and Molina Healthcare of California (collectively, "Molina")[1] in this wrongful termination action filed by Jayson Jordan. On appeal, Jordan argues that the trial court overlooked material disputes of fact supporting an inference that he was terminated because of his physical disability, in violation of California's Fair Employment and Housing Act. Our de novo review of the record leads us to concur with the trial court's determination that Jordan failed to present evidence of unlawful discrimination, and we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**A.** **Approval of Medical Leave and Short-Term Disability Benefits Through November 14, 2018**

In 2018, Jordan had been employed by Molina for some 13 years and was at that time employed as a junior analyst. In August of that year Jordan injured his back while moving furniture at home. He was treated by Darryl Jacobs, D.C., who diagnosed injuries to the lumbar and cervical spine and placed Jordan on a medical leave of absence beginning that day. On September 13, 2018, Dr. Jacobs forwarded to The Hartford ("Hartford"), Molina's third-party benefits administrator, an Attending Physician's Statement regarding Jordan. In that statement, Dr. Jacobs confirmed that Jordan was disabled beginning August 28, 2018, and that his expected "return to work" date was November 14, 2018. Jordan was approved to take medical leave through November 14, 2018. He also applied for and began receiving short-term disability benefits.

---

[1]     Jordan's complaint identifies both entities as his "employer."

2

**B.** *November 27, 2018, Notification by Hartford Requesting Supporting Information for Additional Medical Leave*

After his approved leave expired on November 14, Jordan was still seeing Dr. Jacobs and felt he was not ready to return to work.  Jordan did not communicate with either Hartford or Molina to request an extension of his medical leave.

On November 29, 2018, Hartford sent a letter informing Jordan that his "leave extension request submitted 11/29/18 is currently pending.[2]  In other words, we have not yet made a final decision regarding approval or denial of your leave."  The letter included a chart showing that "continuous leave" for "short term disability" for the period November 14 through December 18, 2018 was "Pending Determination."  Below that chart, under the bold heading "What do you need to do?" the letter explained in bold text "Have your medical provider provide updated medical information to support your extension request by 12/14/2018."  The letter also included contact information for an "absence analyst" at Hartford.

**C.** *Three Additional Notifications by Hartford in December 2018*

On December 5, 2018, Hartford sent another letter to Jordan.  This one resembled the November 29 letter, except the entry on the chart for leave for the period November 14 through December 18, 2018, which stated "Pending Determination" in the November 29 letter, now read "Terminated."  Under the heading

---

[2]     It is not clear what Hartford was referring to by "leave extension request."  No written request is in the record and, as we have seen, both Jordan and Dr. Jacobs denied presenting such a request to either Hartford or Molina.

"What do you need to do?" the December 5 letter instructed Jordan to "[p]lease have your health care provider complete the enclosed Medical Assessment Form to support your request. Once we receive the requested form, we will provide the information to the Molina Leave of Absence Team Leave Administrator, who will then determine if your request can be approved. The deadline for you to provide the requested information is 12/20/2018. . . . If we receive supporting medical information on time, then your leave may be approved. In other words, be sure to protect your rights and provide the information on time!" The letter also advised Jordan to "[k]eep in touch with your manager, the Molina Leave of Absence Department, Leave Administrator and with us." The December 5 letter attached blank forms captioned "Certification of Health Care Provider for Employee's Serious Health Condition" and an "ADA Medical Assessment Form." There is no indication in the record that either of these forms was ever completed and returned to Hartford or Molina.

On December 14, 2018, Hartford sent yet another letter to Jordan. The first sentence of the letter informed Jordan, in bold type, that "your Employee Health Condition leave is scheduled to end on 12/18/2018." Under the heading "What you need to know:" the letter advised Jordan that "As of the date of this letter, we have not received the supporting documentation we previously requested. You must provide the requested documentation. . . . You may lose protections afforded to you under applicable law or company policy if we don't receive the necessary information. So be sure to protect your rights, and provide the information as soon as possible!" Under the heading "What happens next?" the letter advised that "[o]nce we receive

4

the requested certification, we will review it and will then be able to contact the Molina Leave of Absence Department, Leave Administrator for a decision [sic] your request for accommodation." Immediately below that paragraph, under the heading "Your return to work plans:" it stated "Our system reflects an estimated return to work date of 12/19/2018." A form titled "Health Care Provider's Release to Work/Physical Capacities Evaluation" was attached to the letter. Again, a completed version of this form does not appear in the record.

Hartford next contacted Jordan by mail on December 17, 2018. This was a one-page letter reminding Jordan "to provide your completed Americans with Disabilities Act Amendments Act (ADAAA) Medical Assessment Form. Please note the documentation is due 12/20/2018 in order for your employer to consider your request."

### D. *Follow-Up by Molina in January 2019*

On January 17, 2019, Todd Sheets, a benefits administrator in Molina's human resources department, sent an e-mail to Jordan reading as follows: "Hi Jason. Hope this e-mail finds you well. I tried calling you . . . with no luck. It has come to my attention that your current leave of absence was only approved to 11/13/2018. I also understand that your extension of leave from 11/14/2018 to 12/18/2018 was denied. I still show you're off work. Have you had a chance to discuss this with the Hartford? Any updates would be appreciated."

The next day, on January 18, 2019, not having heard from Jordan, Sheets sent another e-mail, this one headed "Leave of Absence Final Letter." This letter listed attempts made by Hartford and Sheets to contact Jordan, and then continued, "Your absences will be unprotected time away from work and

5

subject to the Molina attendance policy: 'An absence of three (3) consecutive days without notifying a supervisor will be considered job abandonment and voluntary resignation.' " The letter ended with a request that Jordan contact Hartford "ASAP to correct the deficiency," or to call Sheets "[i]f you have any questions."

Sheet's e-mail prompted a return telephone call from Jordan. Within 45 minutes of sending his "Leave of Absence Final Letter," Sheets sent another e-mail to Jordan, stating "Thanks so much for calling me back today. Per our conversation, you are working with an analyst at the Hartford by the name of Steve who is working on your extension of leave. I appreciate the update and look forward to updates from the Hartford. Hope you feel better." An hour and a half later, Sheets sent his third e-mail that day to Jordan: "Jayson: Please make sure the paperwork your doctor sends to the Hartford supports dates beginning 11/14/2018. They previously denied the leave from 11/14/2018-12/18/2018 and I want to make sure those dates are protected as well."

On that day Sheets also e-mailed Kim Martin, a Hartford representative, explaining that Sheets's supervisor, Jackie Harrison, was questioning when Molina would receive paperwork substantiating Jordan's leave request and was "pressuring" Sheets about missing paperwork. Sheets informed Martin that "[a]ny assistance would be GREATLY appreciated."

### E. Termination

The next business day was Tuesday, January 22, 2019. On that date Jackie Harrison, a Molina human resources manager and Sheet's supervisor, sent Jordan a termination letter. This letter began, "As of today neither the Hartford nor

6

Molina have received any documentation to substantiate your continued absence." It listed many of the same attempts at communicating with Jordan as Sheets's Leave of Absence Final Letter of January 18, with two additions. First, it notes Jordan's telephone conversation with Sheets on January 19, stating "you were working with a rep at the Hartford that is working on your extension leave." An entry referring to January 22, 2019, reads "Hartford reported STD [short term disability] was only approved through 09/24/2018. Hartford has received no extension documentation, or a request for additional time." Harrison's letter concludes "Your absences were unprotected time away from work and subject to the Molina attendance policy. 'An absence of three (3) consecutive days without notifying a supervisor will be considered job abandonment and voluntary resignation.' Therefore, we have accepted your voluntary resignation effective *January 22, 2019*."

## F. *Jordan's Suit and Molina's Summary Judgment Motion*

On January 11, 2021, Jordan filed this action against Molina, alleging causes of action for (1) wrongful termination in violation of public policy; (2) discrimination based on disability; (3) retaliation; (4) failure to take reasonable steps to prevent discrimination; (5) failure to provide reasonable accommodation; and (6) failure to engage in a good faith interactive process.

On June 1, 2022, Molina filed a motion for summary judgment or, in the alternative, for summary adjudication. The gravamen of the motion was that Jordan had no evidence to show that Molina terminated him illegally or in violation of public policy. Specifically, Molina asserted that it terminated Jordan because he failed to return to work following the end of

his approved medical leave, not because he was disabled or had requested accommodations in connection with his disability. Molina also denied that it had retaliated against Jordan for requesting accommodations, and it asserted that any breakdown in communications was attributable to Jordan by failing to furnish documentation to extend his medical leave or to respond to inquiries from Molina and Hartford.

In support of its motion, Molina presented a declaration from Sheets that attached his e-mails with Jordan on January 18, 2019, and unequivocally denied having any communication from Jordan other than those e-mails and Jordan's telephone call on January 18, 2019. As for Jordan's termination, Sheets states that "Plaintiff was terminated for failing to show up to work for months after expiration of his approved leave of absence. Plaintiff failed to provide any documentation to substantiate his medical injury so that Molina could extend his medical leave. The sole reason Jayson Jordan was terminated was for failing to provide any documentation to extend his leave of absence." Molina also relied on the declaration from Dr. Jacobs, denying that Jordan had ever asked to extend his medical leave or that Dr. Jacobs had ever submitted medical reports for that purpose. Finally, Molina attached excerpts from Jordan's deposition in which, *inter alia*, Jordan denied ever communicating with Molina or Hartford to request an extension of his medical leave.

Jordan's opposition to the motion relied on much of the evidence submitted by Molina – namely, Jordan's deposition testimony and the declarations by Sheets and Dr, Jacobs. The gist of Jordan's opposition to the motion was that Jordan disabled and unable to work following his injury in August of 2018 was

8

legitimately disabled from working.  This was corroborated by Dr. Jacobs.  In his declaration, Dr. Jacobs describes Jordan's visits between November 14, 2018 and January 23, 2019, and states that "[h]ad Mr. Jordan made a request to extend his leave from work during these visits, I would have agreed to extend Mr. Jordan's leave and completed the necessary paperwork to do so because I had deemed him 'totally incapacitated.' "

Substantively, Jordan's opposition to Molina's motion asserted that he was terminated because of his disability.  In response to Molina's undisputed fact No. 52, asserting that "the sole reason [Jordan] was terminated was for failing to provide any documentation to extend his leave of absence," Jordan contended as follows:  "Plaintiff was terminated on account of his disability.  Plaintiff provided sufficient documentation to extend his leave of absence.  Defendant was aware that Plaintiff was temporarily totally disabled as of January 3, 2019, and that he was scheduled for reevaluation on January 3, 2019.  Defendant was also directly notified on January 18, [2019] by Plaintiff, that Plaintiff's physician had determined Plaintiff to be unable to return to work.  Additionally, Defendant was aware that Plaintiff needed to be given more time to provide any necessary documentation it may have needed.  Despite knowing this, Defendants terminated Plaintiff on January 22, 2019, before Plaintiff's reevaluation scheduled January 23, 2019."

## G.    *The Trial Court Grants Molina's Motion*

On November 7, 2022, the trial court heard Molina's motion and granted summary judgment in favor of Molina.  On the causes of action for discrimination, for wrongful termination in violation of public policy, and for retaliation, the court found that Molina had demonstrated that it terminated Jordan for a

9

neutral, non-discriminatory reason – that is, for failure to return to work after the end of his approved medical leave. The court concluded that Jordan's evidence failed to raise a triable issue of material fact, pointing to Jordan's deposition testimony that he lacked personal knowledge that Dr. Jacobs had forwarded information to Hartford to extend Jordan's leave, as well as Dr. Jacobs's declaration denying that he had been asked to assist in extending Jordan's leave and that the paperwork he had submitted to Hartford addressed payment of short-term disability benefits, not an extension of Jordan's medical leave.

The court also granted summary judgment on Jordan's fourth cause of action for failure to prevent discrimination on the ground that Jordan had failed to demonstrate that any discrimination had occurred. The court found in Molina's favor on Jordan's fifth cause of action for failure to reasonably accommodate Jordan's disability by pointing to the absence of evidence that Jordan had met his burden of requesting an accommodation. Finally, the court found in Molina's favor on Jordan's sixth cause of action for failure to engage in an interactive process. Reviewing the evidence, the court concluded that it demonstrated that any fault in communicating was attributable to Jordan, rather than to Molina, because Jordan had failed to request an accommodation and had failed to submit either a request for an extension of his medical leave or medical documentation supporting that request.

Jordan filed a timely notice of appeal on January 6, 2023.[3]

---

[3] Jordan's notice of appeal states that it is from the order granting summary judgment on November 7, 2022. The general rule is that "an order granting summary judgment . . . is not itself appealable." (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 680.)

10

## *DISCUSSION*

### A. *The Governing Law and the Parties' Burdens on Summary Judgment*

Generally speaking, an employer " 'may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.' " (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 344 (*Arteaga*).)  Jordan alleges that Molina discriminated against him on the ground of his disability, in violation of California's Fair Employment and Housing Act (FEHA), Government Code section 12940.  "FEHA prohibits several employment practices relating to physical disabilities.  First, it prohibits employers from refusing to hire, discharging, or otherwise discriminating against employees because of their physical disabilities.  [Citation.]  Second, it prohibits employers from failing to make reasonable accommodation for the known physical disabilities of employees.  [Citation.]  Third, it prohibits them from failing to engage in a timely and good faith interactive process with employees to determine effective reasonable accommodations." (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 371, superseded by statute on other

---

Here, however, the parties have briefed the appeal, and Molina has not argued that Jordan's notice was defective.  Thus, "in the interests of justice and to avoid delay, we construe the order granting summary judgment as incorporating an appealable judgment, and the notice of appeal as appealing from such judgment." (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 7.)  The judgment itself is not in the record, although the trial court's docket entries indicate that a judgment was signed and entered on January 9, 2023.

grounds.)  Each of these unlawful practices gives rise to a separate cause of action.  (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 714 (*Atkins*).)

In analyzing an employee's claim for unlawful discrimination under FEHA, California courts have adopted the three-stage, burden-shifting test the United States Supreme Court established in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).)  Under the *McDonnell Douglas* test, the plaintiff employee has the initial burden to establish a prima facie case of discrimination.  That is, the employee must show " ' "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion . . . .' " ' "  (*Guz, supra,* 24 Cal.4th at p. 355.)  The burden then shifts to the employer to rebut the plaintiff's prima facie showing with evidence that its action was taken for a legitimate, nondiscriminatory reason.  (*Id.* at pp. 355–356; *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 160 (*Wills*).)

"Finally, if the defendant presents evidence showing a legitimate, nondiscriminatory reason, the burden again shifts to the plaintiff to establish the defendant intentionally discriminated against him or her."  (*Wills, supra*, 195 Cal.App.4th at p. 160.)  The plaintiff satisfies this burden " 'by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.' "  (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1529.)

12

California's summary judgment statute, Code of Civil Procedure section 437c, requires a moving defendant to either negate an element of the plaintiff's cause of action or establish a complete defense to that claim. (Code of Civ. Proc., § 437c, subd. (p)(2).) The burdens and order of proof are simplified when an employer defendant moves for summary judgment. (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 309; *Wills, supra*, 195 Cal.App.4th at p. 160.) An employer defendant may meet its initial burden on summary judgment by presenting evidence that establishes a legitimate, nondiscriminatory reason for taking action against the employee. (*Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1735; *Wills supra,* at p. 160.) This is the approach Molina took in its summary judgment motion – to show that it terminated Jordan for violating Molina's attendance policy, not for some reason prohibited by FEHA.

"[T]he great weight of federal and California authority holds that an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz, supra*, 24 Cal.4th at p. 361.) Therefore, to avoid summary judgment, it was incumbent on Jordan to offer "substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005.) Moreover, Jordan's evidence "must relate to the motivation of the

13

decision makers and prove, by nonspeculative evidence, 'an actual causal link between prohibited motivation and termination.' " (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1159.) "If the plaintiff produces *no* evidence from which a reasonable fact finder could infer that the employer's true reason was discriminatory, the employer is entitled to summary judgment." (*Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003.)

## B.  Standard of Review

" ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

On appeal, we " 'must assume the role of the trial court and redetermine the merits of the motion' using the same standards required below." (*Hernandez v. KWPH Enterprises* (2004) 116 Cal.App.4th 170, 175.)  " ' "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. [Citations.]  [¶]  Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. [Citations.] . . .  [¶]  . . . [T]he third and final step is to determine whether the opposition demonstrates the existence of a triable,

material factual issue." ' "  (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 848.)

## C.  *The Trial Court Properly Granted Molina Summary Adjudication of Jordan's First, Second and Fourth Causes of Action*

Jordan's first two causes of action assert that he was terminated in violation of public policy and of FEHA.  Both causes of action are based on Government Code section 12940, subdivision (a), which makes it illegal for an employer to "bar or discharge [a] person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment" by reason of "physical disability."  This statute is also the basis for Jordan's fourth cause of action for failure to prevent discrimination.  In support of each of these causes of action, Jordan alleges that he was terminated from his job on the basis of his physical disability.

Molina's stated reason for terminating Jordan was that he was deemed to have abandoned his job and voluntarily resigned because of his continued absence from work following the end of his approved medical leave.  From Molina's point of view, it had an employee who failed to return to work after completing his medical leave and thereafter ignored repeated requests to furnish information to extend that leave.  Our independent review of the evidence shows that summary adjudication was proper because Molina demonstrated a legitimate, nondiscriminatory reason for terminating Jordan and Jordan failed to produce, in response, substantial evidence of pretext or discriminatory animus.

Molina's attendance policy, the existence of which Jordan does not dispute, affords a neutral, nondiscriminatory justification for his termination. Per that policy, Jordan was subject to being terminated after missing three consecutive days of work without a supervisor's permission. FEHA " 'does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules. "[The FEHA] addresses discrimination." ' " (*Arteaga v. Brinks's, Inc., supra,* 163 Cal.App.4th at p. 344.) Nor is there anything inherently pretextual in Molina's insistence on receiving medical documentation before extending Jordan's medical leave. "Reliance on medical opinion and an individualized assessment is especially important when the symptoms are subjective and the disease is of a type that varies widely between people." (*Leatherbury v. C&H Sugar Co.* (N.D.Cal. 2012) 911 F.Supp.2d 872, 880; *Arteaga*, *supra,* at p. 349 [" 'An individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person' "].)

Applying the summary judgment standard discussed above, in order to defeat Molina's motion it was incumbent upon Jordan to introduce substantial evidence that would permit a reasonable factfinder to infer that Jordan was terminated for reasons prohibited by FEHA. " 'The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the *plaintiff's* proffered reason . . . is correct." [Citation.] In other words, "[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."

16

[Citation.]' " (*Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805, 824.)

Jordan's evidence does not permit a rational factfinder to infer that Molina terminated him because of his disability, rather than for violating Molina's attendance policy. The gist of Jordan's argument is that Molina knew he was disabled when it sent the termination letter on January 22, 2019. But Molina's knowledge that Jordan was disabled does not raise an inference that it terminated Jordan *because* he was disabled. By the time it terminated Jordan, Molina had already afforded him months of medical leave, Hartford had been paying Jordan short-term disability benefits, and both Molina and Hartford had communicated with Jordan about the need to furnish additional information in order to extend his medical leave. Molina's months of accommodating Jordan's disability would not lead a reasonable factfinder to infer an intent to discriminate against Jordan on the ground of that same disability.

Apart from showing that Molina was aware of his disability when it terminated him, Jordan's evidence amounts to showing that (1) he believed he was eligible for additional leave; (2) he relied on Dr. Jacobs to submit the documentation necessary to secure an extension; and (3) he believed that Dr. Jacobs had done so. Here, too, Jordan's arguments and evidence fall well short of what is needed to raise an inference of discriminatory animus. Jordan's assumption that Dr. Jacobs was doing whatever was necessary to document Jordan's request for extended medical leave is not reasonable on its face. When asked how he informed Molina that he needed additional medical leave, Jordan answered, "I continued to see Dr. Jacobs who we have been in touch with and have gone over the paperwork with Hartford, to

17

my assumption." Jordan's assumption was unfounded: at his deposition, Jordan acknowledged that he could not recall either asking Dr. Jacobs to help extend Jordan's medical leave, or giving Dr. Jacobs forms supplied by Hartford for that purpose. For his part, Dr. Jacobs states in his declaration that "I never completed any paperwork extending Mr. Jordan's leave past November 14, 2018. In addition, Mr. Jordan did not request that I extend his leave past November 14, 2018."

Our conclusion that Jordan failed to produce evidence raising a triable issue of discriminatory animus is not changed by Sheets's January 18, 2019, e-mail to Hartford, stating that he was being pressured by Jackie Harrison, Sheets's supervisor, to document Jordan's file. The focus of the e-mail is on Molina's and Hartford's communications with Jordan, on Jordan's failure to respond, and on Jordan's failure to return to work following the end of his leave. Nothing in the e-mail suggests that Harrison was "pressuring" Sheets to terminate Jordan for reasons unrelated to his absenteeism, or that Harrison harbored some discriminatory animus towards Jordan because of his disability. " ' "An inference of fact must be based upon substantial evidence, not conjecture. . . . 'It must be such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists.' " ' " (*Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1149.)

Our inquiry into the existence of discriminatory animus focuses on the " 'decision makers' " who played a role in Jordan's termination. (*Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 109-110 [plaintiff's burden is to show discriminatory animus of one or more persons involved in the

18

challenged employment action].) The only individuals identified in the record who were involved in Jordan's termination are Todd Sheets and Jackie Harrison. Nothing in the record support an inference that either individual was motivated by a discriminatory animus towards Jordan. Sheets's e-mails to Jordan can only be characterized as cordial and helpful. The record contains even less information about Harrison, other than Sheets's comment that he felt "pressured" by Harrison to document Jordan's noncompliance with Molina's attendance policy. Even if true, the fact that Harrison was "pressuring" Sheets to document Jordan's file, or expressed concern that Sheets was not enforcing Molina's attendance policy, does not sustain an inference that Harrison terminated Jordan because he was disabled.

As we have determined that the trial court correctly granted summary adjudication of Jordan's second cause of action for discrimination under FEHA, it necessarily follows that Molina was also entitled to summary adjudication in its favor on Jordan's first cause of action for wrongful termination in violation of public policy, and his fourth cause of action for failure to prevent discrimination. (*See Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 229 (*Hanson*) [where employee's FEHA claim for disability discrimination fails because he cannot demonstrate that employer discriminated on the basis of disability, "[employee's] claim for wrongful termination in violation of public policy fails"]; *Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1318 [failure to prevent discrimination claim fails where defendant employer prevails on underlying discrimination claim]; *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 289 [same].)

19

### D. *Jordan's Third Cause of Action for Retaliation*

Government Code section 12940, subdivision (h) provides, in relevant part, that it is an unlawful employment practice for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." "[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc., supra*, 36 Cal.4th at p. 1042.) Jordan alleges in his complaint that he "was unlawfully terminated in retaliation for his disability and/or requesting an accommodation." In its order granting summary judgment, the trial court referred to Molina's "evidence showing that Plaintiff did not take the requisite steps to extend his medical leave . . . and that Defendants, therefore, terminated Plaintiff for failing to abide by Defendants' attendance policy due to his unauthorized absences, and not due to Plaintiff's disability or request for accommodation." Our review of the evidence leads us to the same conclusion as the trial court: Jordan was terminated because he overstayed his medical leave by more than two months, not in retaliation for his disability or for requesting accommodations.

On appeal, Jordan argues that his termination on January 22, the first business day after he spoke to Sheets about extending his leave, gives rise to an inference that Molina retaliated against him for seeking to extend his medical leave. We reject Jordan's assertion that the timing of his termination

supports an inference that Molina's reliance on its attendance policy was a pretext concealing a retaliatory termination.

"[T]emporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination." (*Arteaga, supra,* 163 Cal.App.4th at p. 353; accord *Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1112 [temporal proximity "does not, without more, suffice also to satisfy the secondary burden borne by the employee to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual"].) Our conclusion that Jordan did not show Molina's stated reason for firing him was false or pretextual leads us to reject his contention that the timing of his termination creates a triable issue of fact regarding his retaliation claim. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 868.)

Jordan's claim of "temporal proximity" is particularly unpersuasive because his focus on a single weekend in January ignores everything that occurred in the months following his injury in August of 2018. Molina did not terminate Jordan when he became disabled. Instead, over the next few months Molina held his job open for him, it granted him a medical leave of absence from his job, and it paid him short-term disability benefits. Beginning in November of 2018, Molina and Hartford repeatedly alerted Jordan to the need to apply for extended leave. None of that conduct supports an inference of discriminatory animus on the part of Molina. No reasonable trier of fact would infer discriminatory intent was the reason for terminating Jordan after months of accommodating his disability. Nor, given that Jordan never submitted any medical records to support an

21

extension of his medical leave, would a reasonable factfinder infer that Molina retaliated against Jordan for a request he never made.

### E.    *Jordan's Fifth Cause of Action for Failure to Accommodate*

Jordan's fifth cause of action accuses Molina of failing to make reasonable accommodations for Jordan's disability. "FEHA imposes on employers the duty to reasonably accommodate their employees' physical disabilities." (*Atkins, supra,* 8 Cal.App.5th at p. 721.) Government Code section 12940, subdivision (m)(1), makes it an unlawful employment practice to "fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee." "The essential elements of a failure to accommodate claim are:  (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability." (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1192.)  The trial court granted summary adjudication of this claim in Molina's favor because "Defendants have shown that an element of the cause of action (that Defendants failed to reasonably accommodate Plaintiff's disability) cannot be established."

We have already discussed the accommodations that Jordan requested and received.  Short term disability benefits are one accommodation.  Holding Jordan's job open for him pending his return from medical leave is a second accommodation. (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 263.) Granting Jordan medical leave is yet another form of accommodation under FEHA.  (*Hanson, supra*, 74 Cal.App.4th at

p. 226.)  Jordan was not terminated because he requested or received those accommodations, but because he failed to request an extension of his medical leave.  " 'Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected.'  [Citation.]" (*Id.* at pp. 226-227.)

"Two principles underlie a cause of action for failure to provide a reasonable accommodation.  First, the employee must request an accommodation.  [Citation.]  Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54.)  The burden is on the employee to request accommodation, and in the absence of such a request the employer is not liable for failure to accommodate the employee's disability.  " 'If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one.' " (*Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1384.)

**F.**    ***Jordan's Sixth Cause of Action for Failure to Engage in Interactive Process***

Jordan's final cause of action alleges that Molina violated Government Code section 12940, subdivision (n), by failing to "engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations." Under that statute, " '[l]iability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith.' " (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1014; see also

23

*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 972 [same].)

Jordan's sixth cause of action suffers from a fundamental flaw: it alleges a failure of the interactive process regarding an accommodation Jordan never requested. Jordan has no recollection of ever responding to Hartford's letters instructing him on how to apply to extend his medical leave. According to Dr. Jacob's declaration, Jordan never indicated that he wanted to extend his medical leave and never asked Dr. Jacobs's assistance in securing such an extension, and Dr. Jordan never made such a request on Jordan's behalf.

The record clearly establishes that Jordan is the party responsible for any breakdown in the interactive process. Molina, on its own and through Hartford, informed Jordan that his leave had expired and advised him what needed to be done to extend his medical leave. Jordan acknowledges that he did not personally respond to any communication from Hartford or Molina until January 18, 2019. Prior to that date Jordan assumed that Dr. Jacobs was doing whatever was needed to extend Jordan's medical leave. He gained this assurance from a conversation with Dr. Jacobs's receptionist, not from Dr. Jacobs himself. Jordan, not Molina, is responsible for the consequences of Jordan's failure to communicate.

### *DISPOSITION*

The judgment is affirmed. Molina is awarded its costs on appeal.



LEE, J.*

WE CONCUR:



BAKER, Acting P. J.



KIM, J.

---

\* Judge of the San Bernardino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.